UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| BRYAN A. HARRISON<br><br>Plaintiff,<br><br>v.<br><br>DAVID B. SHOAR, in his official capacity as Sheriff of St. Johns County, Florida, ST. JOHNS COUNTY, FLORIDA, MATTHEW CLINE, in his personal capacity, KENNETH EVERETT, in his personal capacity, PATRICK WARWIN, in his personal capacity, JOHN & JANE DOE SHERIFF'S DEPUTIES (1-10) and JOHN & JANE DOE SUPERVISORY DEPUTIES (1-10).<br><br>Defendants. | Case No.: 3:21-cv-746-BJD-LLL |

## SECOND AMENDED COMPLAINT
## AND DEMAND FOR JURY TRIAL

Plaintiff, BRYAN A. HARRISON (hereinafter, the "Plaintiff"), by and through his undersigned attorney, sues Defendants DAVID B. SHOAR, in his official capacity as Sheriff of St. Johns County, Florida(hereinafter, "Sheriff Shoar"), ST. JOHNS COUNTY, FLORIDA (hereinafter, "St. Johns County"), MATTHEW CLINE, in his personal capacity (hereinafter, "Undersheriff Cline"), KENNETH EVERETT, in his personal capacity (hereinafter, "Deputy Everett"), PATRICK WARWIN, in his personal capacity (hereinafter, "Deputy Warwin"), JOHN & JANE DOE SHERIFF'S

DEPUTIES (1-10) (hereinafter, the "Unknown Officers"), and JOHN & JANE DOE

SHERIFF'S DEPUTIES (1-10) (hereinafter, the "Unknown Supervisors"), (all

Defendants hereinafter collectively, the "Defendants"), and avers as follows:

## NATURE OF THE ACTION

1.     This is a federal civil rights case pursuant to 42 U.S.C. § 1983 and under

the Fourth and Fourteenth Amendments of the United States Constitution as applied

to the states under the United States Constitution's Fourteenth Amendment for the

Defendants' individual and collective personal, malicious, and unlawful violations

under the cloak of the color of state law of Plaintiff's individual rights.

2.     The Defendants committed these unlawful federal violations of the

Plaintiff's constitutional rights under the cloak of the color of state law, in bad faith,

and with malicious purpose in reckless, wanton, and willful disregard of both

Plaintiff's safety and his human and civil rights.

3.     The Defendants committed these Florida state violations while acting

inside the course and scope of their employment, under the cloak of the color of state

law, and cloaked under the authority of state law enforcement.

4.     The Plaintiff seeks relief, including declaratory and injunctive relief,

compensatory damages, punitive damages, costs, and attorney's fees, pursuant to 42

U.S.C. § 1988.

## PARTIES

5.     The Plaintiff is a natural person residing in St. Augustine, St. Johns

County, Florida. At all times relevant to this action, the Plaintiff was a resident of St.

Johns County, Florida.

6.     Upon information and belief, Defendant Sheriff Shoar is a natural person residing in St. Johns County, Florida, who is no longer the Sheriff of St. Johns County, but at all times relevant to this action, was the Sheriff of St. Johns County, Florida.

7.     Upon information and belief, Defendant St. Johns County is a political subdivision of the State of Florida with the capacity to sue and be sued.

8.     Upon information and belief, Defendant Undersheriff Cline is a natural person residing in St. Johns County, Florida, who is no longer the Undersheriff of St. Johns, but at all times relevant to this action, was the Undersheriff for the St. Johns County Sheriff's Office.

9.     Upon information and belief, Defendant Deputy Everett is a natural person residing in St. Johns County, Florida, and at all times relevant to this action, was a Deputy in the St. Johns County Sheriff's Office.

10.     Upon information and belief, Defendant Deputy Warwin is a natural person residing in St. Johns County, Florida, and at all times relevant to this action, was a Deputy in the St. Johns County Sheriff's Office.

11.     Defendants Unknown Officers are individuals who were in non-supervisory positions at the St. Johns County Sheriff's Office at all times relevant to this action, whose names and addresses of residences are unknown at the time of filing.

12.     Defendants Unknown Supervisors are individuals who were in supervisory positions at the St. Johns County Sheriff's Office at all times relevant to this action, whose names and addresses of residences are unknown at the time of filing.

## VENUE AND JURISDICTION

13.     Venue is proper in the Middle District Court of Florida, pursuant to 28 U.S.C. § 1391(b) and M.D. Fla. Loc. R. 1.02 (c), and Defendants' independent and collective malicious and unlawful violations under the cloak of the color of state law of Plaintiff's constitutional rights giving rise to the claims herein accrued within this district and division, as all Defendants work and/or reside in this district and division, and all of the acts and omissions giving rise to this action occurred in St. Johns County, which is in this district and division.

14.     The Court has subject-matter jurisdiction over the Plaintiff's federal law claims, pursuant to 28 U.S.C. §§ 1331 (federal question), and 1343(a)(3) (civil rights).

15.     Declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, as well as Federal Rule of Civil Procedure 65.

16.     The Plaintiff's state law tort claims related to these federal claims form a part of the same case or controversy, and this Court has supplemental jurisdiction over Plaintiff's state law claims, pursuant to 28 U.S.C. § 1367(a).

17.     These constitutional law violations are "capable of repetition, yet evading review." Roe v. Wade, 410 U.S. 113, 125 (1973) (citing Southern Pacific Terminal Co. v. ICC, 219 U. S. 498, 515 (1911), Moore v. Ogilvie, 394 U. S. 814, 816 (1969), Carroll v. Princess Anne, 393 U. S. 175, 178-179 (1968), United States v. W. T. Grant Co., 345 U. S. 629, 632-633 (1953)).

18.     All conditions precedent to the maintenance of this action have been performed, have occurred prior to its institution, or have been waived.

<u>**FACTS COMMON TO ALL COUNTS**</u>

**I.     The July 29, 2019 Incident.**

19.     On July 29, 2019 at approximately 3:00PM, Deputy Everett and Deputy Warwin of the St. Johns County Sheriff's Office (hereinafter, "SJCSO") knocked on the Plaintiff's apartment door located at 245 Lasa Dr., Apt. 208 in St. Augustine, Florida.

20.     The Plaintiff looked through the peephole to check to see who was there as the Plaintiff was not expecting any visitors.

21.     The Plaintiff could see through the peephole that they were law enforcement officers, so he asked if they had probable cause to enter or a warrant for his arrest.

22.     Deputy Everett said they could not hear the Plaintiff and asked if the Plaintiff could open the door.

23.     The Plaintiff then turned on his 360-degree camera which was near the entrance and on the kitchen counter.

24.     The Plaintiff opened the door enough so Deputy Everett and Deputy Warwin could see the Plaintiff's face and hands so he could observe Plaintiff was no threat and to find out what they wanted.

25.     Without introducing himself, Deputy Everett began aggressively bombarding the Plaintiff with questions regarding his ex-girlfriend, Danielle McDaniel (hereinafter, "McDaniel").

26.     Plaintiff sensed a hostile attitude and responded, "Officer I am sorry, but

I don't answer any questions without my attorney present".

27.    Deputy Everett continued asking Plaintiff additional questions and each time Plaintiff responded with the same response.

28.    After the third onslaught of more questions Plaintiff responded again that he does not answer questions without his attorney present, and added, "I think we are done here and have a nice day."

29.    Plaintiff began to close the door at which point Deputy Everett put his shoe between the door and the door jamb to keep Plaintiff from closing the door.

30.    Deputy Everett helped push the door open and the two officers entered the apartment.

31.    Plaintiff told the officers they were being filmed and asked why they were violating his Fourth Amendment Rights.

32.    Deputy Warwin knocked the video camera over on the counter on purpose attempting to make any recording unusable.

33.    At that point Deputy Everett placed the Plaintiff in handcuffs and took him downstairs and outside to their patrol car, humiliating him in front of his neighbors.

34.    Deputy Everett then placed the Plaintiff inside the patrol car.

35.    On July 29, 2019, the outside mid-afternoon temperature was approximately 85 degrees, and the patrol car was turned off with no air conditioning running.

36.    The car was sitting in the sun, facing East, with the car's windows rolled

up, and the inside temperatures in the car would range from approximately 117 degrees to 127 degrees over the next hour.

37.   The officers were not in the Plaintiff's view at various times after the Plaintiff was placed inside the patrol car.

38.   At least once Plaintiff saw an officer walk back up the stairs towards his apartment and the Plaintiff therefore has reason to believe a search of the apartment was conducted.

39.   When the officers were standing near the vehicle, approximately three (3) feet away, the Plaintiff was screaming through the window that he needed assistance as he was having difficulty breathing, but those pleas were ignored.

40.   The Plaintiff then began to experience some chest pain and continued to ask for assistance.

41.   After approximately forty-five (45) minutes, Deputy Everett opened the car door and turned the car on. He then said, "it's been on the entire time".

42.   The Plaintiff replied, "Are you really going to lie to my face? I'm sure there is a black box in the car which will show the car was turned off."

43.   Deputy Everett then walked away and returned in a few minutes.

44.   The Plaintiff told Deputy Everett that he was experiencing chest pains and asked what was going on.

45.   Deputy Everett then asked, "Are you willing to talk to me now?"

46.   The Plaintiff responded, "That depends if I am under arrest?"

47.   Deputy Everett then walked away from the patrol car again.

48. After approximately 5-10 more minutes had passed, Deputy Everett returned and stated, "You are being placed under arrest for felony stalking."

49. The Plaintiff then told Deputy Everett that he was experiencing extreme chest pain, and that the Plaintiff had a right to be seen by Emergency Medical Services (hereinafter, "EMS").

50. At this point, Deputy Everett contacted EMS.

51. Deputy Everett then said to the Plaintiff that, "Because of your medical I am going to let you out and sit on the ground and uncuff you."

52. EMS arrived shortly thereafter, followed by an Unknown Supervisor (hereinafter, the "Sergeant") and approximately 3 to 4 other Unknown Officers.

53. When EMS examined the Plaintiff's vitals, they told the Plaintiff that his heartrate was over 200 beats-per-minute, and that they thought that he was having a panic attack, but they could not rule out a heart problem.

54. The Plaintiff told EMS that he took prescribed medication for panic attacks, and an EMS person relayed this information to the Sergeant.

55. The Plaintiff then asked, "What is going on? Am I under arrest?"

56. The Sergeant replied, "You just need to chill."

57. After a short period of time, the Sergeant told the Plaintiff that he could go to his apartment to take his medications, and then asked, "Do you mind if an EMS follows you?"

58. The Plaintiff again asked the Sergeant if he was under arrest, to which the Sergeant replied, "Who said that?"

59.    The Plaintiff then told the Sergeant that he only wanted EMS to accompany him as he did not trust the police officers after what had just occurred.

60.    EMS followed the Plaintiff to his apartment and observed him take his medications.

61.    At that point, Deputy Everett, Deputy Warwin, the Sergeant, and all of the other Unknown Officers left the apartment complex without placing the Plaintiff under arrest.

62.    Throughout the entire unlawful detainment, the Plaintiff was humiliated, confused, intimidated, and suffered extreme emotional distress resulting in a severe panic attack.

63.    The Plaintiff continues to suffer PTSD symptoms including irritability, negative outlook for the future, emotional distress, difficulty sleeping, and nightmares.

**II.    Internal Affairs.**

64.    On or about November 20, 2019, the Plaintiff filed a Citizen Comment Form (attached hereto as **Exhibit "A"**) requesting an internal investigation into the events of the July 29, 2019 incident (hereinafter, the "Incident").

65.    As a result of the Plaintiff's request for an internal investigation, Deputy Everett, and possibly Deputy Warwin, were disciplined.

66.    On information and belief, Deputy Everett was specifically disciplined for a violation of the Saint Johns County Sheriff's Office's internal standards of conduct, specifically, Policy 26.1 – Bullet 2.29 (Neglect to perform any duty in the manner required by rules and regulations, rules of duty or rules of procedure).

67.    The SJCSO disciplinary report states that:

On 07-29-19, [Deputy Everett] entered a residence, without the legal justification to enter a dwelling to arrest a misdemeanor stalking suspect. He was secured and a short time later released; while on scene. Case law listed is the 2019 Legal Guidelines prohibits this type of action. The Legal Guidelines were reviewed and DEP. Everett now has a better understanding of the legal exceptions to enter dwelling and make arrests.

(*Disciplinary Report*, attached hereto as **Exhibit "B"**).

68.    In addition, the Plaintiff received a letter signed by Undersheriff Cline, stating that:

The review of the circumstances by Lt. Lawing concluded the deputies' first line supervisor identified issues with the deputies' performance that were not within the guidelines of Sheriff's Office policy. Specifically, entering your residence to affect an arrest without a warrant. The deputies have been disciplined.

(*See*, **Ex. "C"**).

69.    The SJCSO under Sheriff Shoar was known nationwide for a persistent and widespread pattern of illegal and unethical practices, including improper searches, detainments, arrests, spoliation of exonerating evidence, and other failures of leadership and training.

70.    These practices are so widespread that they constitute a custom that fairly represents county policy and are so obvious that they demonstrate deliberate indifference toward suspects' and detainees' constitutional rights by St. Johns County, Sheriff Shoar, Undersheriff Cline, and the Unknown Supervisors (hereinafter, the "Supervisory Defendants").

71.    The aforementioned customs, policies, practices, and procedures, the

failure to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, and tolerance of wrongful conduct of the Supervisory Defendants, were a moving force and/or a proximate cause of the deprivations of the Plaintiff's clearly established and well settled constitutional rights under the United States Constitution in violation of 42 U.S.C. §1983, as well as in violation of state law.

**COUNT I**
**42 U.S.C. § 1983 – RECKLESS INDIFFERENCE TO PLAINTIFF'S CLEARLY ESTABLISHED CONSTITUTIONAL RIGHTS (_MONELL_)**
**U.S. Const. Amend. IV – Improper Search & Seizure**
**(St. Johns County, Sheriff Shoar)**

Plaintiff, Bryan A. Harrison, hereby sues Defendants St. Johns County, and Sheriff Shoar, in his official capacity, for purposes of seeking damages pursuant to the Fourth & Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, and alleges:

72.     Plaintiff repeats and reavers each and every allegation of paragraphs 1 through 71 as though fully set forth herein.

73.     The Fourth Amendment to the United States Constitution provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Amend. IV.

74.     A search or "[a]n arrest without a warrant and lacking probable cause violates the [Fourth Amendment] and can underpin a § 1983 claim...." Lloyd v. Leeper, 451 F. Supp. 3d 1314, 1323 (M.D. Fla. 2020) (quoting Brown v. City of Huntsville, Ala., 608 F.3d 724, 734 (11th Cir. 2010)); see also Jones v. Brown, 649 Fed. Appx. 889, 890 (11th Cir. 2016).

75.     Defendants St. Johns County and Sheriff Shoar's official and/or unofficial policies and customs encouraged, caused, allowed, and/or enabled Defendants Everett, Deputy Warwin, Unknown Officers, and Unknown Supervisors to violate Plaintiff's constitutional rights without fear of discipline for those violations. See, Monell v. Department of Social Services, 436 U.S. 658 (1978).

76.     Defendants St. Johns County and Sheriff Shoar have not sufficiently disciplined Defendants Deputy Everett, Deputy Warwin, Unknown Officers, and Unknown Supervisors for their violations of Plaintiff's constitutional rights and therefore have implicitly approved, ratified, or adopted, Defendants Everett, Deputy Warwin, Unknown Officers, and Unknown Supervisors' unconstitutional actions, yet Defendants St. Johns County and Sheriff Shoar are responsible for Defendants Deputy Everett, Unknown Officers, and Unknown Supervisors' supervision, training, and discipline through its policy-making powers and personnel decisions.

77.     There is an obvious need for Defendants St. Johns County and Sheriff Shoar to train all of the SJCSO employees and agents on Fourth & Fourteenth Amendment rights, particularly with respect to improper searches, improper detainments, and other violations of civil rights and the Constitution of the United

States of America. Defendants St. Johns County and Sheriff Shoar have therefore demonstrated a policy of deliberate indifference to such civil rights violations. *See*, <u>City of Canton v. Harris</u>, 489 U.S. 378, 389 (1989).

78.    Defendants St. Johns County and Sheriff Shoar's callous, reckless, wanton, and malicious actions under the cloak of the color of state law before, during, and after the incidents described herein, have caused the Plaintiff to suffer and continue to suffer the damages that the Plaintiff has described.

79.    These deprivations cloaked under the color of state law are actionable under and may be redressed by 42 U.S.C. § 1983.

80.    Qualified immunity does not apply to this case, because the question of whether a reasonable officer could have believed a warrantless search to be lawful is objective and is viewed in light of clearly established law and the information the searching officers possessed; subjective beliefs about the search are irrelevant. <u>Anderson v. Creighton</u>, 483 U.S. 635, 641 (1987).

81.    As a result, the Disciplinary Report clearly proves that the search was objectively improper, as it was in violation of internal SJCSO procedures.

82.    There was no probable cause for the detention or search.

83.    Furthermore, sovereign immunity does not extend to counties. <u>N. Ins. Co. of New York v. Chatham County, Ga.</u>, 547 U.S. 189, 189 (2006).

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment:

     a.   Direct the entry of judgment for Plaintiff against Defendants St. Johns County and Sheriff Shoar for damages;

b. Direct the entry of judgment for Plaintiff against Defendants St. Johns County and Sheriff Shoar for nominal damages;

c. Award Plaintiff his reasonable attorneys' fees, litigation expenses, and costs incurred in connection with this action from Defendants St. Johns County and Sheriff Shoar pursuant to 42 U.S.C. § 1988; and

d. Award all other relief that this Court deems just and proper.

## COUNT II
## 42 U.S.C. § 1983 – RECKLESS INDIFFERENCE TO PLAINTIFF'S CLEARLY ESTABLISHED CONSTITUTIONAL RIGHTS
### U.S. Const. Amend. IV – Improper Search & Seizure
### (Deputy Everett, Deputy Warwin, Unknown Officers, and Unknown Supervisors)

Plaintiff, Bryan A. Harrison, hereby sues Defendants Deputy Everett, Deputy Warwin, Unknown Officers, and Unknown Supervisors, in their personal and official capacities, for purposes of seeking damages pursuant to the Fourth & Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, and alleges:

84. Plaintiff repeats and reavers each and every allegation of paragraphs 1 through 71 as though fully set forth herein.

85. The Fourth Amendment to the United States Constitution provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Amend. IV.

86.     A search or "[a]n arrest without a warrant and lacking probable cause violates the [Fourth Amendment] and can underpin a § 1983 claim...." Lloyd v. Leeper, 451 F. Supp. 3d 1314, 1323 (M.D. Fla. 2020) (quoting Brown v. City of Huntsville, Ala., 608 F.3d 724, 734 (11th Cir. 2010)); see also Jones v. Brown, 649 Fed. Appx. 889, 890 (11th Cir. 2016).

87.     Defendants Deputy Everett, Deputy Warwin, Unknown Officers, and Unknown Supervisors' callous, reckless, wanton, and malicious actions under the cloak of the color of state law before, during, and after the incidents described herein, have caused the Plaintiff to suffer and continue to suffer the damages that the Plaintiff has described.

88.     These deprivations of Plaintiff's Fourth Amendment rights and Fourteenth Amendment procedural due process rights cloaked under the color of state law are actionable under and may be redressed by 42 U.S.C. § 1983.

89.     Qualified immunity does not apply to this case, because the question of whether a reasonable officer could have believed a warrantless search to be lawful is objective and is viewed in light of clearly established law and the information the searching officers possessed; subjective beliefs about the search are irrelevant. Anderson v. Creighton, 483 U.S. 635, 641 (1987).

90.     There was no probable cause for the detention or search.

91.     As a result, the Disciplinary Report clearly proves that the search was objectively improper, as it was in violation of internal SJCSO procedures.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment:

a. Direct the entry of judgment for Plaintiff against Deputy Everett, Deputy Warwin, Unknown Officers, and Unknown Supervisors for damages;

b. Direct the entry of judgment for Plaintiff against Deputy Everett, Deputy Warwin, Unknown Officers, and Unknown Supervisors for nominal damages;

c. Award Plaintiff his reasonable attorneys' fees, litigation expenses, and costs incurred in connection with this action from Deputy Everett, Deputy Warwin, Unknown Officers, and Unknown Supervisors pursuant to 42 U.S.C. § 1988; and

d. Award all other relief that this Court deems just and proper.

<u>**COUNT III**</u>
<u>**42 U.S.C. § 1983 – DEPRIVATION OF PLAINTIFF'S**</u>
<u>**CLEARLY ESTABLISHED CONSTITUTIONAL**</u>
<u>**RIGHTS - CRUEL AND UNUSUAL PUNISHMENT**</u>
**U.S. Const. Amend. XIV**
**(Deputy Everett, Deputy Warwin, Unknown Officers,**
**and Unknown Supervisors)**

Plaintiff, Bryan A. Harrison, hereby sues Defendants Deputy Everett, Deputy Warwin, Unknown Officers, and Unknown Supervisors, in their personal capacities, for purposes of seeking damages pursuant to the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983, and alleges:

92. Plaintiff repeats and reavers each and every allegation of paragraphs 1 through 71 as though fully set forth herein.

93.    The Fourteenth Amendment has been found by U.S. courts to prohibit deliberate indifference to a serious medical need.

94.    However, the standards under the Fourteenth Amendment are identical to those under the Eighth. Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007).

95.    In order to prove deliberate indifference to a serious medical need under the Fourteenth Amendment, a plaintiff must shoulder three burdens. First, he must satisfy the objective component by showing that he had a serious medical need. Second, he must satisfy the subjective component by showing that the officer acted with deliberate indifference to his serious medical need. Third, as with any tort claim, he must show that the injury was caused by the defendant's wrongful conduct. Goebert, 510 F.3d at 1326.

96.    A deliberate indifference claim entails both an objective and a subjective component. Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004).

97.    First, the Plaintiff must establish "an objectively serious medical need"—that is, "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention"—that, "if left unattended, poses a substantial risk of serious harm." Id. (alteration adopted) (quotation omitted).

98.    Second, the Plaintiff must prove that the officers acted with deliberate indifference to that need by showing (1) that they had "subjective knowledge of a risk of serious harm" and (2) that they "disregard[ed]" that risk (3) by conduct that was

"more than mere negligence." Id.; Harper v. Lawrence Cty., 592 F.3d 1227, 1234 (11th Cir. 2010); Patel v. Lanier County Georgia, 969 F.3d 1173, 1188 (11th Cir. 2020).

99.   The Fourteenth Amendment applies to prevent officers from acting or failing to act in a manner that shows a deliberate indifference to a detainee's serious medical needs. Lancaster v. Monroe Cty., 116 F.3d 1419, 1425 n.6 (11th Cir. 1997).

100.   "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Mann v. Taser Intern., Inc., 588 F.3d 1291, 1307 (11th Cir. 2009) (internal quotation and citation omitted).

101.   Alternatively, it is one that "is determined by whether a delay in treating the need worsens the condition." Mann, 588 F.3d at 1307. The condition "must be one that, if left unattended, poses a substantial risk of serious harm." Id. (internal quotation marks and citation omitted); *see also*, Prescott v. Oakley, 8:16-CV-060-T-27TBM, 2016 WL 8919458, at *4–5 (M.D. Fla. Dec. 6, 2016).

102.   Defendants Deputy Everett, Deputy Warwin, Unknown Officers, and Unknown Supervisors acted "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property". § 768.28(9)(a), Fla. Stat.

103.   The Plaintiff was locked in a hot car without air-conditioning on, for nearly an hour, while he pleaded with Defendants Deputy Everett, Deputy Warwin, Unknown Officers, and/or Unknown Supervisors that he was experiencing severe chest pains, which are universally recognized as a serious medical condition.

104.   Furthermore, the U.S. Supreme Court has concluded that deliberate indifference to serious medical needs of detainees constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104–05 (1976).

105.   This is true whether the indifference is manifested by doctors in their response to the detainee's needs or by officers in "intentionally denying *or delaying* access to medical care". Id.

106.   Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983. Id.

107.   The Eleventh Circuit has recognized a Fourteenth Amendment claim arising from the placement and confinement of a detainee in an "unventilated and un-air-conditioned" vehicle for an extended period. Bilal v. Geo Care, LLC, 981 F.3d 903, 913 (11th Cir. 2020)

108.   Given Deputy Everett's comments after leaving the Plaintiff in this state of intense pain and extreme danger for nearly an hour were, "Are you willing to talk to me now?", this suggests that it was his direct intention to leave the Plaintiff in the hot car in order to cause pain and torture him until he would give a statement.

109.   This confinement and denial of treatment constitutes deliberate indifference to a serious medical need in violation of the Fourteenth Amendment.

110.   Defendants Deputy Everett, Deputy Warwin, Unknown Officers, and Unknown Supervisors willfully and maliciously deprived the Plaintiff of his Fourteenth Amendment rights by subjecting him to cruel and unusual punishment

including, but not limited to: (1) the confinement in a dangerous and painful hot car without ventilation or air conditioning for approximately one hour, in order to convince the Plaintiff to give a statement to the officers; and (2) by refusing to act on the Plaintiff's complaints of chest pains for approximately one hour.

111.   At all relevant times, Defendants Deputy Everett, Deputy Warwin, Unknown Officers, and Unknown Supervisors were acting under the cloak of the color of state law.

112.   These deprivations under the cloak of the color of state law are actionable under and may be redressed by 42 U.S.C. § 1983.

113.   Qualified immunity does not apply to this case, as the SJCSO has already determined that Deputy Everett "entered a residence, without the legal justification to enter a dwelling to arrest a misdemeanor stalking suspect." **Ex. "C"**.

114.   As a result, Defendants Deputy Everett, Deputy Warwin, Unknown Officers, and Unknown Supervisors did not have probable cause to enter the residence.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment:

    a.   Direct the entry of judgment for Plaintiff against Defendants Deputy Everett, Deputy Warwin, Unknown Officers, and Unknown Supervisors for damages;

    b.   Direct the entry of judgment for Plaintiff against Defendants Deputy Everett, Deputy Warwin, Unknown Officers, and Unknown Supervisors for nominal damages;

    c.   Award Plaintiff his reasonable attorneys' fees, litigation expenses, and

costs incurred in connection with this action from Defendants Deputy Everett, Deputy Warwin, Unknown Officers, and Unknown Supervisors pursuant to 42 U.S.C. § 1988; and

d.  Award all other relief that this Court deems just and proper.

## COUNT IV
## NEGLIGENT HIRING
### (Florida State Common Law)
### (Sheriff Shoar)

Plaintiff, Bryan A. Harrison, hereby sues Defendants Sheriff Shoar in his official capacity, for purposes of seeking damages for the Florida state common law claim of failure to train, and alleges:

115.   Plaintiff repeats and reavers each and every allegation of paragraphs 1 through 71 as though fully set forth herein.

116.   Under the Fourteenth Amendment to the United States Constitution, Plaintiff had the right as a citizen detained by police officers to personal security, bodily integrity, and equal protection under the law regarding his procedural due process rights.

117.   As articulated more fully previously herein, Defendants Deputy Everett Deputy Warwin, and Unknown Officers, repeatedly violated these rights of the Plaintiff on the day of the subject Incident.

118.   Sheriff Shoar owed the Plaintiff a duty and the Plaintiff was within the "zone of risk" created by the Sheriff's negligent hiring, retention and supervision policies.

119.    However, as the person responsible for hiring, retaining and supervising deputy sheriffs, the Sheriff had a duty to prevent an employee from assaulting a person placed under arrest. Buckler v. Israel, 13-62074-CIV-MARRA, 2014 WL 1464472, at *6 (S.D. Fla. Apr. 14, 2014); *See also*, Vaden v. Campbell, No. 4:09cv12–RH/WCS, 2009 WL 1919474, at * 3 (N.D.Fla. July 2, 2009); Farabee v. Rider, 995 F.Supp. 1398, 1403–04 (M.D.Fla.1998) (the sheriff owes duty to an arrestee taken into custody by deputies to lessen risk of harm created by the sheriff's failure to properly train or supervise deputies); cf. Walker v. Palecek, No. 3:05–CV–760–J, 2006 WL 335803, at * 3 ("under Florida law, sheriffs are vicariously liable for the negligent acts of their deputies").

120.    It was foreseeable that Defendants Deputy Everett, Deputy Warwin, and Unknown Officers would use their positions as law enforcement officers to injure third parties.

121.    As a result of the Sheriff's actions with respect to hiring of Defendants Deputy Everett, Deputy Warwin, and Unknown Officers, Plaintiff has suffered injuries.

122.    It was incumbent on Defendant Sherrif Shoar, given the authority and supervisory powers inherent with their positions of superior command, to ensure that the officers under their command were adequately trained with respect to proper police procedure so as to safeguard the constitutional rights of the citizens within their jurisdiction with whom they may come into contact.

123.    Defendant Sherrif Shoar had a further duty to adequately determine

whether the potential officers to be hired as police officers are under his command such that violations of the constitutional rights of the citizens within their jurisdiction could not occur, and further, that in such an event, the violating officer or officers could face appropriate disciplinary consequences.

124.   It is clear, given the facts alleged herein, that Defendant Sherrif Shoar, while acting under the cloak of the color of state law, failed to adequately determine whether the officers under their command, namely Defendants Deputy Everett, Deputy Warwin, and Unknown Officers, were likely to violate the rights of innocent citizens, as Defendants Deputy Everett, Deputy Warwin, and Unknown Officers repeatedly violated the constitutional rights of the Plaintiff on the day of the subject Incident, as complained of herein.

125.   Further, Defendan Sherrif Shoar has not adequately or sufficiently disciplined Defendants Deputy Everett, Deputy Warwin, and Unknown Officers for their violations of Plaintiff's constitutional rights and therefore have implicitly approved, ratified, or adopted, Defendants Everett, Deputy Warwin, and Unknown Officers' unconstitutional actions, evidencing the adoption of unwritten unconstitutional policies and practices within the St. Johns County Sherriff's Office itself.

126.   With respect to the policies of the St. Johns County Sherriff's Office, the SJCSO lists on its website, located at https://www.sjso.org/about-sjso/biased-based-policing-policy/, the Office's quite ironically named "Biased Policing Policy".

127.   Specifically, the policy provides, in relevant part, as follows:

> It is the policy of the St. Johns County Sheriff's Office to patrol in a proactive manner, to *aggressively* investigate suspicious persons and circumstances, and to actively enforce the motor vehicle laws.  It is also the policy that *citizens will only be stopped or detained when there exists reasonable suspicion to believe they have committed, are committing, or are about to commit an infraction of the law.*

(Emphasis added).

128.   Clearly, Defendants Deputy Everett, Deputy Warwin, and Unknown Officers have taken the mandate to "aggressively investigate" too literally, but even more clear is the blatant violation of and non-abidance to the Office's own purported policy by the Defendants with respect to its provision that, "citizens will *only* be stopped or detained when there exists reasonable suspicion to believe they have committed, are committing, or are about to commit an infraction of the law." (Emphasis added.)

129.   As the SJCSO has already determined, Deputy Everett "entered a residence, without the legal justification to enter a dwelling to arrest a misdemeanor stalking suspect." **Ex. "B"**.

130.   Therefore, it is apparent that the "Biased Policing Policy" which the SJCSO purports to follow in theory is not the actual policing policy that its officers follow in practice.

131.   Rather, the actual policing policy the officers under the command of Defendants Sherrif Shoar, Undersheriff Cline, and Unknown Supervisors appear to follow is a genuinely biased policing policy, in that it prejudices citizens like the Plaintiff and results in egregious denials of constitutional rights.

132.    Thus, the failures of Defendant Sherrif Shoar, both in practice and as reflected in the SJCSO's actual in-practice policies, to adequately train and supervise the officers under their command, such as Defendants Deputy Everett, Deputy Warwin, and Unknown Officers, have amounted to deliberate indifference to the fact that these failing could, and proximately did, result in the violation of Plaintiff's rights on the day of the subject Incident.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment:

a.  Direct the entry of judgment for Plaintiff against Defendant Sheriff Shoar for damages;

b.  Direct the entry of judgment for Plaintiff against Defendant Sheriff Shoar for nominal damages;

c.  Award Plaintiff his reasonable attorneys' fees, litigation expenses, and costs incurred in connection with this action from Defendants Sheriff Shoar, Undersheriff Cline, and Unknown Supervisors pursuant to 42 U.S.C. § 1988; and

d.  Award all other relief that this Court deems just and proper.

## COUNT V
## NEGLIGENT SUPERVISION
### (Florida State Common Law)
### (Sheriff Shoar, Undersheriff Cline, and Unknown Supervisors)

Plaintiff, Bryan A. Harrison, hereby sues Defendants Sheriff Shoar in his official capacity, and Undersheriff Cline, and Unknown Supervisors in their personal capacities, for purposes of seeking damages for the Florida state common law claim of

failure to train, and alleges:

133.   Plaintiff repeats and reavers each and every allegation of paragraphs 1 through 71 as though fully set forth herein.

134.   Under the Fourteenth Amendment to the United States Constitution, Plaintiff had the right as a citizen detained by police officers to personal security, bodily integrity, and equal protection under the law regarding his procedural due process rights.

135.   As articulated more fully previously herein, Defendants Deputy Everett Deputy Warwin, and Unknown Officers, repeatedly violated these rights of the Plaintiff on the day of the subject Incident.

136.   As supervisory officers, Defendants Sheriff Shoar, Undersheriff Cline, and Unknown Supervisors owed the Plaintiff a duty and the Plaintiff was within the "zone of risk" created by the Sheriff's negligent hiring, retention and supervision policies.

137.   However, as the people responsible for supervising deputy sheriffs, Defendants Sheriff Shoar, Undersheriff Cline, and Unknown Supervisors had a duty to prevent an employee from assaulting a person placed under arrest. Buckler v. Israel, 13-62074-CIV-MARRA, 2014 WL 1464472, at *6 (S.D. Fla. Apr. 14, 2014); See also, Vaden v. Campbell, No. 4:09cv12–RH/WCS, 2009 WL 1919474, at * 3 (N.D.Fla. July 2, 2009); Farabee v. Rider, 995 F.Supp. 1398, 1403–04 (M.D.Fla.1998) (the sheriff owes duty to an arrestee taken into custody by deputies to lessen risk of harm created by the sheriff's failure to properly train or supervise deputies); cf. Walker v.

Palecek, No. 3:05–CV–760–J, 2006 WL 335803, at * 3 ("under Florida law, sheriffs are vicariously liable for the negligent acts of their deputies").

138.   It was foreseeable that Defendants Deputy Everett, Deputy Warwin, and Unknown Officers would use their positions as law enforcement officers to injure third parties.

139.   As a result of the Sheriff's actions with respect to the supervision of Defendants Deputy Everett, Deputy Warwin, and Unknown Officers, Plaintiff has suffered injuries.

140.   It was incumbent on Defendant Sherrif Shoar, given the authority and supervisory powers inherent with their positions of superior command, to ensure that the officers under their command were adequately trained with respect to proper police procedure so as to safeguard the constitutional rights of the citizens within their jurisdiction with whom they may come into contact.

141.   Defendant Sherrif Shoar had a further duty to adequately determine whether the potential officers to be hired as police officers are under his command such that violations of the constitutional rights of the citizens within their jurisdiction could not occur, and further, that in such an event, the violating officer or officers could face appropriate disciplinary consequences.

142.   It is clear, given the facts alleged herein, that Defendant Sherrif Shoar, while acting under the cloak of the color of state law, failed to adequately determine whether the officers under their command, namely Defendants Deputy Everett, Deputy Warwin, and Unknown Officers, were likely to violate the rights of innocent

citizens, as Defendants Deputy Everett, Deputy Warwin, and Unknown Officers repeatedly violated the constitutional rights of the Plaintiff on the day of the subject Incident, as complained of herein.

143.    Further, Defendants Sherrif Shoar, Undersheriff Cline, and Unknown Supervisors have not sufficiently disciplined Defendants Deputy Everett, Deputy Warwin, and Unknown Officers for their violations of Plaintiff's constitutional rights and therefore have implicitly approved, ratified, or adopted, Defendants Everett, Deputy Warwin, and Unknown Officers' unconstitutional actions, evidencing the adoption of unconstitutional policies and practices within the St. Johns County Sherriff's Office itself.

144.    With respect to the policies of the St. Johns County Sherriff's Office, the SJCSO lists on its website, located at https://www.sjso.org/about-sjso/biased-based-policing-policy/, the Office's quite ironically named "Biased Policing Policy".

145.    Specifically, the policy provides, in relevant part, as follows:

> It is the policy of the St. Johns County Sheriff's Office to patrol in a proactive manner, to *aggressively* investigate suspicious persons and circumstances, and to actively enforce the motor vehicle laws.  It is also the policy that *citizens will only be stopped or detained when there exists reasonable suspicion to believe they have committed, are committing, or are about to commit an infraction of the law.*

(Emphasis added).

146.    Clearly, Defendants Deputy Everett, Deputy Warwin, and Unknown Officers have taken the mandate to "aggressively investigate" too literally, but even more clear is the blatant violation of and non-abidance to the Office's own purported

policy by the Defendants with respect to its provision that, "citizens will *only* be stopped or detained when there exists reasonable suspicion to believe they have committed, are committing, or are about to commit an infraction of the law." (Emphasis added.)

147.   As the SJCSO has already determined, Deputy Everett "entered a residence, without the legal justification to enter a dwelling to arrest a misdemeanor stalking suspect." **Ex. "B"**.

148.   Therefore, it is apparent that the "Biased Policing Policy" which the SJCSO purports to follow in theory is not the actual policing policy that its officers follow in practice.

149.   Rather, the actual policing policy the officers under the command of Defendants Sherrif Shoar, Undersheriff Cline, and Unknown Supervisors appear to follow is a genuinely biased policing policy, in that it prejudices citizens like the Plaintiff and results in egregious denials of constitutional rights.

150.   Thus, the failures of Defendants Sherrif Shoar, Undersheriff Cline, and Unknown Supervisors, both in practice and as reflected in the SJCSO's actual in-practice policies, to adequately train and supervise the officers under their command, such as Defendants Deputy Everett, Deputy Warwin, and Unknown Officers, have amounted to deliberate indifference to the fact that these failing could, and proximately did, result in the violation of Plaintiff's rights on the day of the subject Incident.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment:

a. Direct the entry of judgment for Plaintiff against Defendants Sheriff Shoar, Undersheriff Cline, and Unknown Supervisors for damages;

b. Direct the entry of judgment for Plaintiff against Defendants Sheriff Shoar, Undersheriff Cline, and Unknown Supervisors for nominal damages;

c. Award Plaintiff his reasonable attorneys' fees, litigation expenses, and costs incurred in connection with this action from Defendants Sheriff Shoar, Undersheriff Cline, and Unknown Supervisors pursuant to 42 U.S.C. § 1988; and

d. Award all other relief that this Court deems just and proper.

<u>COUNT VI</u>
<u>FALSE IMPRISONMENT</u>
(Florida State Common Law)
(Deputy Everett, Deputy Warwin, and Unknown Officers)

Plaintiff, Bryan A. Harrison, hereby sues Defendants Deputy Everett, Deputy Warwin, and Unknown Officers, in their personal capacities, for purposes of seeking damages for the Florida state common law claim of false imprisonment, and alleges:

151. Plaintiff repeats and reavers each and every allegation of paragraphs 1 through 71 as though fully set forth herein.

152. In order to prove a claim of false imprisonment, a Plaintiff must establish that the Defendants: (1) intended to confine the Plaintiff; (2) performed an act resulting in the Plaintiff's confinement; and (3) the Plaintiff was conscious of the confinement

or resulting harm. <u>Everett v. Florida Inst. of Tech.</u>, 503 So. 2d 1382, 1384 (Fla. 5th DCA 1987); <u>Borneisen v. Capital One Fin. Corp.</u>, 8:09-CV-02539-T-17, 2011 WL 2730972, at *9 (M.D. Fla. July 13, 2011), <u>aff'd</u>, 490 Fed. Appx. 206 (11th Cir. 2012).

153.    Defendant Deputy Everett, with the assistance of Deputy Warwin and Unknown Officers, intended to confine the Plaintiff and performed an act in the furtherance of that confinement by locking the Plaintiff in a hot car without air-conditioning on, for nearly an hour, while he pleaded with Deputy Everett, Deputy Warwin, and Unknown Officers that he was experiencing severe chest pains, which are universally recognized as a serious medical condition.

154.    At all times during the Plaintiff's confinement, the Plaintiff was aware of being confined and in great distress.

155.    Qualified immunity does not apply to this case, as the SJCSO has already determined that Deputy Everett "entered a residence, without the legal justification to enter a dwelling to arrest a misdemeanor stalking suspect." **Ex. "C"**.

156.    As a result, Defendants Deputy Everett, Deputy Warwin, and Unknown Officers did not have any legal right or probable cause to confine the Plaintiff.

157.    The actions of Defendants Deputy Everett, Deputy Warwin, and Unknown Officers were taken while acting within the scope of their employment.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment:

  a.  Direct the entry of judgment for Plaintiff against Defendants Deputy Everett, Deputy Warwin, and Unknown Officers for damages;

  b.  Award Plaintiff his reasonable attorneys' fees, litigation expenses, and

costs incurred in connection with this action from Defendants Deputy

Everett, Deputy Warwin, and Unknown Officers; and

c.  Award all other relief that this Court deems just and proper.

### DEMAND FOR JURY TRIAL

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully Submitted,

Amended:   14FEB2022

ROOK ELIZABETH RINGER, ESQ.
Florida Bar No. 1015698
LENTO LAW GROUP, P.A.
222 San Marco Ave., Ste. C
St. Augustine, FL 32084
904.602.9400 (Office)
904.299.5400 (Fax)
reringer@lentolawgroup.com
*Attorney for Plaintiff*
TRIAL COUNSEL

JOSEPH D. LENTO, ESQ.
(*Pro Hac Vice* to be applied for)
LENTO LAW GROUP, P.A.
1500 Market Street – 12th Floor
East Tower
Philadelphia, PA 19106
267.833.0200 (Office)
267.833.0300 (Fax)

Jdlento@lentolawgroup.com
*Attorney for Plaintiff*
TRIAL COUNSEL