UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| BRYAN A. HARRISON<br><br>Plaintiff,<br><br>v.<br><br>DAVID B. SHOAR, in his official capacity as Sheriff of St. Johns County, Florida, ST. JOHNS COUNTY, FLORIDA, MATTHEW CLINE, in his official capacity as Undersheriff of St. Johns County, Florida, KENNETH EVERETT, in his personal and official capacities as a deputy of the St. Johns County Sheriff's Office, PATRICK WARWIN, in his personal and official capacities as a deputy of the St. Johns County Sheriff's Office, JOHN & JANE DOE SHERIFF'S DEPUTIES (1-10) and JOHN & JANE DOE SUPERVISORY DEPUTIES (1-10).<br><br>Defendants. | Case No.: 3:21-cv-746-BJD-LLL |

## PLAINTIFFS' RESPONSE TO DEFENDANT, SHERIFF DAVID B. SHOAR AND UNDERSHERIFF MATHEW CLINE'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW [Dkt. #46]

**COMES NOW** the Plaintiff, BRYAN A. HARRISON (hereinafter, the "Plaintiff"), by and through his undersigned attorney, and hereby responds in opposition to the Defendant, Sheriff David B. Shoar and Undersheriff Mathew Cline's Motion to Dismiss Plaintiff's Second Amended Complaint and Incorporated

Memorandum of Law [Dkt. #46] (hereinafter, the "Motion to Dismiss") filed by Defendants DAVID B. SHOAR, and MATTHEW CLINE (hereinafter, the "Defendants"), and in support thereof would state the following:

1. On July 28, 2021, the Plaintiff filed the Complaint in the above-captioned case. [Dkt. #1].

2. On December 14, 2021, the Plaintiff filed his First Amended Complaint. [Dkt. #29].

3. On February 14, 2022, the Plaintiff filed his Second Amended Complaint (hereinafter, the "Complaint"). [Dkt. #38].

4. On February 24, 2022, Defendants David B. Shoar and Matthew Cline filed their Motion to Dismiss (hereinafter, the "Motion to Dismiss"). [Dkt. #32].

5. In the Motion to Dismiss, the Defendants request that this Court dismiss counts I, IV, and V of the Complaint.

6. This Court should deny the Motion to Dismiss.

## MEMORANDUM OF LAW

### I.   STANDARD OF REVIEW.

**A. Motions for Dismiss for Failure to State a Claim.**

The threshold for surviving a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6) is a low one. Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A., et al., 711 F.2d 989, 995 (11th Cir.1983). A plaintiff must plead only enough facts to state a claim to relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) (abrogating the "no set of facts"

standard for evaluating a motion to dismiss established in Conley v. Gibson, 355 U.S. 41, 45–46, (1957)). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. Id. (*citing* Sanjuan v. American Board of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir.1994)). In evaluating the sufficiency of a complaint in light of a motion to dismiss, the well pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff. Quality Foods, 711 F.2d at 994–95.

Because of the liberal pleading requirements of the Federal Rules, rarely will a motion to dismiss for failure to state a claim be granted. Quality Foods, 711 F.2d at 995. Indeed, such a motion should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. (*quoting* Conley, 355 U.S. at 45–46, 78 S.Ct. at 102; *accord* McLain v. Real Estate Board of New Orleans, Inc., 444 U.S. 232, 246 (1980); Dussouy v. Gulf Coast Investment Corp., 660 F.2d 594, 602 (5th Cir.1981); Quinonez v. Nat'l Ass'n of Sec. Dealers, Inc., 540 F.2d 824, 826-827 (5th Cir. 1976).

**II.     ARGUMENT.**

   **A. The Second Amended Complaint alleges a Monell claim (Count I).**

To begin, while the December 2, 2019 Letter (hereinafter, the "Cline Letter") from Defendant Undersheriff Matthew Cline (hereinafter, "Cline") does address the unlawful conduct of "the deputies", it does not specify the names of the deputies, nor does it address all of the Constitutional violations. In fact, the Cline Letter limits its

application to, [s]pecifically, entering [the Plaintiff's] residence to affect an arrest without a warrant.

While that is a serious violation of the Plaintiff's Constitutional rights, that is not all that was pleaded with respect to the un-Constitutional actions of Defendant Kenneth Everett (hereinafter, "Everett") and Defendant Patrick Warwin (hereinafter, "Warwin") in this case[1]. Specifically, and in addition to the unlawful entry into the Plaintiff's residence, the Second Amended Complaint alleges that Warwin and Everett also violated the Plaintiff's Constitutional rights under the Fourth and Fourteenth Amendments by unlawfully detaining him, placing him in a hot car without air conditioning turned on, unlawfully searching his residence, et cetera.

Furthermore, Count I is explicitly pleaded as violations of the Fourth Amendment, "Improper Search & Seizure", and notes that that Amendment prohibits a "search or '[a]n arrest without a warrant and lacking probable cause'". (*Complaint,* ¶ 74). Count I also states that, "[t]here was no probable cause for the detention or search." (*Complaint,* ¶ 82).

In other words, while the Cline Letter takes responsibility for the unlawful entry into the Plaintiff's residence, it does not go so far as to discuss or apologize for the unlawful detention of the Plaintiff or the search of his apartment. In fact, the aspect of this kind of behavior occurring among the deputies of the St. Johns County Sheriff's

---

[1] For ease of understanding, this Response refers only specifically to Defendants Everett and Warwin's actions, but the Court should recognize the applicability of the arguments with respect to Defendants John & Jane Doe Sheriff's Deputies (1-10) and John & Jane Doe Supervisory Deputies (1-10).

Office (hereinafter, "SJSO") lends credence to the allegations in the Complaint that:

> There is an obvious need for Defendants St. Johns County and Sheriff Shoar to train all of the SJCSO employees and agents on Fourth & Fourteenth Amendment rights, particularly with respect to improper searches, improper detainments, and other violations of civil rights and the Constitution of the United States of America. Defendants St. Johns County and Sheriff Shoar have therefore demonstrated a policy of deliberate indifference to such civil rights violations. *See*, City of Canton v. Harris, 489 U.S. 378, 389 (1989).

(*Complaint,* ¶ 77).

The mere fact that two SJSO deputies – and likely more, given the presence of additional officers on the scene after the Plaintiff was detained – also stands as *prima facie* evidence of SJSO's lackadaisical policies, procedures, training, and – as will be discussed in Sections (B) and (C) – negligent hiring, and supervision. The fact that SJSO investigated this incident and did not include unlawful detention or search in the Cline Letter also evidences ratification of those Constitutional violations.

Additionally, the Second Amended Complaint pleaded that:

> 69. The SJCSO under Sheriff Shoar was known nationwide for a persistent and widespread pattern of illegal and unethical practices, including improper searches, detainments, arrests, spoliation of exonerating evidence, and other failures of leadership and training.
>
> 70. These practices are so widespread that they constitute a custom that fairly represents county policy and are so obvious that they demonstrate deliberate indifference toward suspects' and detainees' constitutional rights by St. Johns County, Sheriff Shoar, Undersheriff Cline, and the Unknown Supervisors (hereinafter, the "Supervisory Defendants").
>
> 71. The aforementioned customs, policies, practices, and procedures, the failure to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline;

and the unconstitutional orders, approvals, and tolerance of wrongful conduct of the Supervisory Defendants, were a moving force and/or a proximate cause of the deprivations of the Plaintiff's clearly established and well settled constitutional rights under the United States Constitution in violation of 42 U.S.C. §1983, as well as in violation of state law.

(*Complaint*, ¶¶ 69-70).

A municipality may be liable "on the basis of ratification when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority." Hoefling v. City of Miami, 811 F.3d 1271, 1279 (11th Cir. 2016) (*citing* Matthews v. Columbia County, 294 F.3d 1294, 1297 (11th Cir. 2002)). As implicated in this case, the Eleventh Circuit has also suggested that a county's "persistent failure to take disciplinary action against officers can give rise to the inference that a municipality ratified conduct, thereby establishing a 'custom' within the meaning of Monell." Fundiller v. City of Cooper City, 777 F.2d 1436, 1443 (11th Cir. 1985); *see also* Rivas v. Figueroa, No. 11–23195–Civ., 2012 WL 1378161, *3 (S.D. Fla. Apr. 20, 2012) ("A municipality may be liable for violating Section 1983 even where the municipality provides rules and regulations for the operation of its police department, if those rules were repeatedly violated and the municipality failed to rectify the situation") (*citing* Depew v. City of St. Marys, 787 F.2d 1496, 1499 (11th Cir. 1986)).

Additionally, the SJSO has a history of officers violating Fourth Amendment rights. For example, in the case of Gennusa v. Shoar, SJSO officers Detective Thomas Marmo (hereinafter, "Marmo") and Sergeant Brian Canova (hereinafter, "Canova")

violated the Fourth Amendment rights of both a suspect and his lawyer by secretly recording and eavesdropping on a privileged attorney-client meeting, and then forcefully ripping a written statement from the lawyer's hands, causing injury. 879 F. Supp. 2d 1337, 1352 (M.D. Fla. 2012), aff'd sub nom. Gennusa v. Canova, 748 F.3d 1103 (11th Cir. 2014). At the time of the incident that is the subject of this lawsuit, Canova was the training coordinator for SJSO, and Marmo was still a detective for SJSO.

Instead of accepting responsibility for SJSO's failures with respect to Marmo and Canova, Shoar instead stated that, "[t]his may be the most frivolous lawsuit I have ever encountered in my career. It is cases like these that cause members of the public to be very critical of the effectiveness of our civil justice system in America." *See*, Prior, Richard, *Attorney Sues Sheriff's Office*, St. Augustine Record, (Dec. 9, 2009, 11:08 p.m.), https://www.staugustine.com/story/news/local/2009/12/10/attorney-sues-sheriffs-office/16171485007/.

### B. The Second Amended Complaint alleges claim for negligent hiring (Count IV).

Here, the Motion to dismiss argues that the Plaintiff, "has alleged no facts to suggest that the deputies acted outside the course and scope of their employment". (*Motion to Dismiss*, p. 9). However, Exhibits A, B, and C to the Complaint show that

Furthermore, the standard to overcome with respect to this issue on a motion to dismiss is exceedingly low. For example, this Court, in Stockwell v. Nelson, discussed the hurdle in question as follows:

> Nelson argues that Count II's allegations both that Nelson "acted outside the course and scope of his employment" and that Nelson acted "in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property" are "mere conclusion[s], unsupported by any allegation of ultimate fact." (Doc. 23 at 5) A review of the complaint confirms that Nelson "acted under the color of the law and by virtue of [his] authority as [a] law enforcement officer[ ] for the City of Tampa." (Doc. 1 ¶ 12) The complaint fails to allege any fact demonstrating that Nelson acted outside the course and scope of his employment. However, as Stockwell correctly argues, the complaint states "sufficient facts in which a reasonable jury could find that [Nelson's] actions were committed with bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."

8:15-CV-951-T-23TBM, 2016 WL 473220, at *2 (M.D. Fla. Feb. 8, 2016).

Here, the Complaint has alleged that at least some of the acts of the Defendants in question were "wanton and malicious", and as such, they are sufficient to defeat the Defendants' arguments in the Motion to Dismiss.

### C. The Second Amended Complaint alleges a claim for negligent supervision (Count V).

First, the Defendants argue that Defendant Cline should be dismissed, because "he is not an employer", citing to Santillana v. Florida State Court Sys., 609CV-2095-ORL-19KRS, 2010 WL 271433, at *11 (M.D. Fla. Jan. 15, 2010). (*Motion to Dismiss*, pp. 9-10). Although this is an unpublished decision and the Plaintiff cannot locate any other case-law discussing this issue either for or against the Defendants' position, if this Court determines that Defendant Cline, who was clearly a supervisor of Defendants Everett and Warwin, cannot be a defendant to a negligent supervision claim, then the Plaintiff will withdraw him as a defendant for that count.

The Defendants argue that the claims in Counts IV and V should be dismissed "because they are discretionary in nature". (*Motion to Dismiss*, p. 13). However, this argument, as stated would suggest that there is never a situation where a sheriff can be liable for negligent hiring or supervision with respect to his deputies' actions. The Defendants cite to Gelbard v. City of Miami, Fla., but that case's factual allegations were apparently much less sufficient than that of the instant case, with the court stating there that:

> The only factual information that can be gleaned from Plaintiff's allegation of negligent failure to train and supervise is that Plaintiff was arrested by a police officer named Jeffrey Locke, and suffered damages consisting of mental pain and suffering as a result of the arrest.

845 F. Supp. 2d 1338, 1341 (S.D. Fla. 2012).

Furthermore, that case's analysis specifically deals with the "failure to train", and only mentions supervision in passing. For example, the conclusion on the issues of training and supervision concludes:

> As such, Defendant's decisions involving the training of its police force are considered a discretionary function. Therefore, this claim is barred by sovereign immunity and must be dismissed with prejudice.

Gelbard, 845 F. Supp. 2d at 1341.

The Defendants also cite to Gelbard for the claim that these counts are "discretionary" in nature and subject to dismissal. (*Motion to Dismiss*, pp. 13-14). However, "[c]laims for negligent supervision and retention are considered claims that implicate operational functions of the government, rather than discretionary

functions." Asia v. City of Miami Gardens, 1420117CIVCOOKETORRE, 2016 WL 739656, at *3 (S.D. Fla. Feb. 25, 2016) (*citing to* Johnson v. Cannon, 947 F. Supp. 1567, 1573-74 (M.D. Fla. 1996)). It just does not get any clearer than that.

The remainder of the issues presented with respect to Count V have already been addressed herein in Section (B).

WHEREFORE, the Plaintiff respectfully requests that this Court deny the Defendant, Sheriff David B. Shoar and Undersheriff Mathew Cline's Motion to Dismiss Plaintiff's Second Amended Complaint and Incorporated Memorandum of Law, and for any and all other relief as this Court deems in the interests of justice.

Respectfully submitted,

DATED:  17 MAR 2022

ROOK ELIZABETH RINGER, ESQ.
**LENTO LAW GROUP, P.A.**
222 San Marco Ave., Ste. "C"
St. Augustine, FL 32084
904.602.9400 x 467 (Office)
904.299.5400 (Fax)
reringer@lentolawgroup.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on March 17, 2022, a copy of the foregoing has been furnished by CM/ECF to all counsel of record.

Respectfully submitted,

DATED: <u>17 MAR 2022</u>    ROOK ELIZABETH RINGER, ESQ.
**LENTO LAW GROUP, P.A.**
*Attorney for Plaintiff*