UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BRYAN A. HARRISON,

    Plaintiff,

v.                                               Case No. 3:21-cv-746-BJD-LLL

DAVID B. SHOAR, in his official
capacity as Sheriff of St. Johns
County, Florida, MATTHEW
CLINE, in his personal capacity,
KENNETH EVERETT, in his
personal capacity, PATRICK
WARWIN, in his personal capacity,
JOHN & JANE DOE SHERIFF'S
DEPUTIES (1-10), JOHN & JANE
DOE SUPERVISORY DEPUTIES
(1-10), and ST. JOHNS COUNTY,
FLORIDA,

    Defendants.
_____/

## ORDER

**THIS CAUSE** is before the Court on Defendants Shoar and Cline's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 46) and Plaintiff's Response in Opposition (Doc. 50).

### A.   Background

Plaintiff sues Defendant Shoar under 42 U.S.C. § 1983 and under Florida State law for negligent hiring and supervision following an incident with law enforcement at Plaintiff's resident. (See generally Doc. 38). Plaintiff

sues Defendant Cline under Florida state law for negligent supervision related to the same incident. See generally id.

On July 29, 2019, Defendants Everett and Warwin came to Plaintiff's residence to investigate Plaintiff for a stalking incident. Id. at ¶¶ 19, 67. Defendants Everett and Warwin were deputies with the St. Johns County Sheriff's Office (SJCSO). Id. at ¶¶ 9–10. Plaintiff alleges Defendants Everett and Warwin "bombard[ed]" Plaintiff with questions related to an alleged stalking incident with Plaintiff's ex-girlfriend. Id. at ¶ 25. Plaintiff did not respond to Defendants' questions and "began to close the door" on Defendants. Id. at ¶ 29. Defendant Everett allegedly "put his shoe between the door and the door jamb to keep Plaintiff from closing the door." Id. After this, Defendants Everett and Warwin allegedly "pushed the door open," "entered the apartment," "placed Plaintiff in handcuffs," and placed Plaintiff into a patrol car. Id. at ¶¶ 30, 33, 34.

Plaintiff was not arrested. Id. at ¶ 61. Plaintiff alleges that during the incident, he suffered from extreme chest pain, an elevated heart rate, a panic attack, and humiliation. Id. at ¶¶ 49, 53, 62. Plaintiff further alleges he continues to suffer from extreme emotional distress, including post-traumatic stress disorder (PTSD). Id. at ¶ 63.

After the incident, Plaintiff filed a Citizen Comment Form to request an internal investigation to review Defendants Everett and Warwin's actions.

Id. at ¶ 64. Defendant Everett was disciplined because of the investigation. Id. at ¶ 65.

Relative to this Motion to Dismiss, Plaintiff sues Defendant Shoar under 42 U.S.C. § 1983 and under Florida State law for negligent hiring. See generally id. Plaintiff sues Defendants Shoar and Cline under Florida state law for negligent supervision. See generally id. Defendants Shoar and Cline move to dismiss by arguing Plaintiff has failed to allege Defendants are liable under Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658 (1978), or under Florida state law. (See generally Doc. 46).

## B. Legal Standard

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). An action fails to state a claim for which relief may be granted, and might be dismissed, if it fails to include such a short and plain statement. See Harper v. Lawrence Cnty., Ala., 592 F.3d 1227, 1232–33 (11th Cir. 2010) (citing Fed. R. Civ. P. 8(a)(2), 12(b)(6)).

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

Under Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint for "failure to state a claim upon which relief can be granted." When reviewing a motion to dismiss, the Court must take the complaint's allegations as true and construe them in the light most favorable to the plaintiff. Rivell v. Private Health Care Sys., Inc., 520 F.3d 1308, 1309 (11th Cir. 2008). The Court must accept well-pleaded facts as true at this stage, but it does not have to accept a plaintiff's legal conclusions. Chandler v. Sec'y of Fla. Dep't of Transp., 695 F.3d 1194, 1199 (11th Cir. 2012). It is insufficient for a plaintiff's complaint to put forth merely labels, conclusions, and a formulaic recitation of the elements of the cause of action. Bell Atlantic Corp v. Twombly, 550 U.S. 544, 555 (2007).

C. Discussion

> *a. Plaintiff's claim that Defendant Shoar violated 42 U.S.C. § 1983 must be dismissed.*

Plaintiff sues Defendant Shoar in his official capacity, claiming he violated Plaintiff's Fourth and Fourteenth Amendment rights. Plaintiff alleges Defendant Shoar is liable because he created "unofficial policies and customs" to encourage Defendant Everett to unlawfully enter Plaintiff's

- 4 -

residence, did not "sufficiently" discipline Defendants Everett and Warwin, and failed to train SJCSO "employees and agents on Fourth [and] Fourteenth Amendment rights[.]" (Doc. 38 at ¶¶ 75–78).

Federal law does not allow local governments to "be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 694 (1978). A city is liable when "execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id.

"[T]he Supreme Court has placed strict limitations on municipal liability under § 1983." Grech v. Clayton Cnty., 335 F. 3d 1326, 1329 (11th Cir. 2003). "A municipality can be liable under § 1983 only when 'the municipality itself causes the constitutional violation at issue.'"[1] 625 Fusion, LLC v. City of Fort Lauderdale, 526 F. Supp. 3d 1253, 1260 (S.D. Fla. 2021) (citing City of Canton v. Harris, 489 U.S. 378, 385 (1989)). "Monell, the Supreme Court has explained, is a case about responsibility, and is meant to limit the § 1983 liability to acts which the municipality has officially

---

[1] Plaintiff sues Defendant Shoar in his official capacity. "Official-capacity suits [ ] 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" Kentucky v. Graham, 473 U.S. 159, 165–66 (1985) (citing Monell, 436 U.S. at 690, n.55). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Id.

sanctioned or ordered." Hoefling v. City of Miami, 811 F.3d 1271, 1279 (11th Cir. 2016) (internal quotation marks omitted) (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 478, 480 (1986)).

"A municipality 'causes' a violation where (1) it acts via 'an official policy enacted by its legislative body'"; "(2) 'final policymakers have acquiesced in a longstanding practice that constitutes the entity's standard operating procedure'; or (3) 'on the basis of ratification when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority.'" 625 Fusion LLC, 526 F. Supp. 3d at 1260 (citing Hoefling, 811 F.3d at 1279).

Additionally, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." Canton, 489 U.S. at 388. "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." Id. at 389.

The Court then explains what the steps courts should take to resolve a city's liability on a failure to train claim:

> In resolving the issue of a city's liability, the focus must be on adequacy of [an existing] training program in relation to the tasks the particular

>officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program. It may be, for example, that an otherwise sound program has occasionally been negligently administered. Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal. And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable. . . . Moreover, for liability to attach in this circumstance[,] the identified deficiency in a city's training program must be closely related to the ultimate injury.

Id. at 390–91 (citations omitted).

Plaintiff's claim under 42 U.S.C. § 1983 against Defendant Shoar for reckless indifference to Plaintiff's Fourth and Fourteenth Amendment rights will be dismissed. While the Supreme Court has indicated, "Congress included customs and usages within its definition of law in § 1983 because of the persistent and widespread discriminatory practices of state officials in some areas of the post-bellum South." Adickes v. S. H. Kress & Co., 398 U.S. 144, 167 (1970),[2] Plaintiff simply does not provide sufficient allegations

---

[2] "What is now 42 U.S.C. § 1983 came into existence as § 1 of the Ku Klux Klan Act of April 20, 1871." Adickes, 398 U.S. at 162. The Court has explained that § 1983 extends to

within the Second Amended Complaint for the claim against Defendant Shoar under § 1983 to be categorized as something other than a conclusory formulaic recitation of elements of a deprivation of rights. See Twombly, 550 U.S. at 555.

Plaintiff alleges the "SJCSO under Sheriff Shoar was known nationwide for a persistent and widespread pattern of illegal and unethical practices, including improper searches, detainments, arrests, spoilation of exonerating evidence, and other failures of leadership and training." (Doc. 38 at ¶ 69). Despite making this allegation, which, absent specificity, amounts to a legal conclusion and conjecture, Plaintiff offers only one example to purportedly show such persistent and widespread pattern of wrongdoing. (See Docs. 38, 50); see also Gennusa v. Shoar, 879 F. Supp. 2d 1337 (M.D. Fla. 2012) (Corrigan, J.), aff'd sub nom., Gennusa v. Canova, 748 F.3d 1103 (11th Cir. 2014). Plaintiff offers the facts alleged in Gennusa to purportedly show a pattern of harm created by the SJCSO and Defendant Shoar. (Doc. 50 at 6–7).

---

municipalities and other local government units because "a 'custom or usage' for purposes of § 1983 . . . is not simply a practice that reflects longstanding social habits, generally observed by the people in a locality." Id. at 166–67. The custom or usage "must have the force of law by virtue of the persistent practices of state officials. . . . Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law." Id. at 167–68.

In Gennusa, a lawyer and her client sued members of the SJCSO, including Defendant Shoar, for violating their Fourth Amendment rights when members of the SJCSO recorded "their attorney-client conversations in an interview room at the Sheriff's Office" and forcefully seized the client's written statement. Gennusa v. Shoar, 879 F. Supp. 2d at 1341–42. There, Chief Judge Corrigan granted Defendant Shoar's motion for summary judgment, finding the "County's written policy does not itself violate federal law or direct an officer to do so." Id. at 1351. Despite deficiencies within Defendant Shoar's motion for summary judgment, the court granted Defendant Shoar's motion "[b]ecause, as a matter of law, [the] plaintiffs ha[d] not created an issue of fact regarding municipal liability." Id. at 1352.

Here, Plaintiff's allegations and arguments of a "custom" or "policy" fail for four reasons. First, the Fourth Amendment violation contemplated in Gennusa is not the same, or even a similar, type of violation. Here, Plaintiff alleges Defendant Everett violated the Fourth Amendment by entering Plaintiff's dwelling and, allegedly, improperly seizing Plaintiff. Comparatively, in Gennusa, the Fourth Amendment violation concerned improper recording of a conversation between an attorney and her client and improper seizure of a statement from the client. See id. at 1341–42; see also Canton, 489 U.S. at 391 (explaining an "identified deficiency . . . must be closely related to the ultimate injury").

Second, the alleged violations are not only dissimilar, the underlying actions in Gennusa occurred in 2009, whereas the current incident occurred in 2019. See Gennusa v. Shoar, Case No.: 3:09-cv-1208-TJC-MCR, (Doc. 41 at ¶ 9), (M.D. Fla. Aug. 31, 2011). As other courts have observed, a "custom" can be established by alleging a "'permanent and well settled' course behavior." Carter v. City of Montgomery, 473 F. Supp. 3d 1273, 1298 (M.D. Ala. 2020) (citing City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988)). A custom cannot be alleged by showing two incidents occurring a decade apart from each other. See Wakefield v. City of Pembroke Pines, 269 Fed. App'x 936, 940 (11th Cir. 2008) ("Two incidents, occurring approximately thirteen months apart, are insufficient to establish a custom."); see also Young v. City of Augusta, Ga. Through DeVaney, 59 F.3d 1160, 1165–XX (11th Cir. 1995) (finding that three incidents of alleged violations occurring within two months, along with records showing a pattern of the same constitutional violations and other evidence, was enough to establish a custom or practice to overcome a motion for summary judgment).

Third, Plaintiff alleges Defendant Everett, potentially Defendant Warwin, and a host of unidentified officers engaged in violating Plaintiff's constitutional rights. This allegation, related to the one incident in Plaintiff's complaint, is not enough to overcome Defendant Shoar's Motion to Dismiss. See Canton, 489 U.S. at 390–91 ("That a particular officer may be

unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.").

Finally, Plaintiff alleges Defendant Shoar may have violated § 1983 by ratifying the Defendant deputies' behavior by "not sufficiently disciplin[ing]" the Defendants. (Doc. 38 at ¶ 76); see also Hoefling, 811 F.3d at 1279. "[R]atification exists when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policy making authority." Matthews v. Columbia Cnty., 294 F.3d 1294, 1297 (11th Cir. 2002). "The final policymaker, however, must ratify not only the decision itself, but also the unconstitutional basis for it." Id. "For [a] plaintiff[ ] to state a successful § 1983 claim against a municipality based on a ratification theory," the plaintiff "must demonstrate that local government policymakers had an opportunity to review the subordinate's decision and agreed with both the decision and the decision's basis[.]" Garvie v. City of Ft. Walton Beach, Fla., 366 F.3d 1186, 1189 (11th Cir. 2004) (quotations and citations omitted).

Plaintiff plainly alleges that the SJCSO, and Defendant Shoar by extension, learned of a problem with the officers involved in the incident and that SJCSO conducted an internal affairs investigation. (See Doc. 38 at ¶¶ 64–71). At the conclusion of the investigation, at least Defendant Everett was

disciplined. (Docs. 38 at ¶ 68; 38.3). By these very allegations, Defendant Shoar could not have ratified Defendant deputies' behavior because after the review, the SJCSO disciplined the officers involved in the incident. Taking the Second Amended Complaint's allegations as true and construing them in the light most favorable to Plaintiff, this Court finds Plaintiff has failed to allege a "policy" or "custom" to find Defendant Shoar violated Plaintiff's constitutional rights. See Rivell, 520 F.3d at 1309. Count I of the Second Amended Complaint will be dismissed.

### b. *Plaintiff's claims that Defendant Shoar negligently hired, and Defendants Shoar and Cline negligently supervised, Defendants Everett, Warwin and Unknown Officers in violation of Florida state law must be dismissed.*

To state a claim for negligence under Florida law, a plaintiff must establish that the defendant owed the plaintiff a duty of care, that the defendant breached that duty, and that the breach caused the plaintiff to suffer damages. Lewis v. City of St. Petersburg, 260 F.3d 1260, 1262 (11th Cir. 2001). Florida law recognizes four categories to determine whether a government agency owes a duty to an alleged tort victim: "(1) legislative enactments or administration regulations; (2) judicial interpretations of such enactments or regulations; (3) other judicial precedent; and (4) a duty arising

from the general facts of the case." Wallace v. Dean, 3 So. 3d 1035, 1047 (Fla. 2009). Florida's public-duty doctrine relates "exclusively to the question of whether the government owes a duty of care to the individual plaintiff or group of plaintiffs as opposed to the general public." Id. at 1045.

Of the four categories, the second, or "judicial interpretations of such enactments or regulations," is at issue here. See Trianon Park Condominium Ass'n, Inc. v. City of Hialeah, 468 So. 2d 912, 919–21 (Fla. 1985). In this category, the Florida Supreme Court acknowledged the "discretionary power to enforce compliance with the law, as well as the authority to protect the public safety, is most notably reflected in the discretionary power given to judges, prosecutors, arresting officers, and other law enforcement officials." Id. at 919.

"Generally, tort liability does not attach to activities within category II; however, a special duty of care may attach if a plaintiff can show that the governmental actor owed the alleged tort victim a special duty of care." Anderson v. Snyder, 389 F. Supp. 3d 1082, 1091 (S.D. Fla. 2019) (citing Wallace, 3 So. 3d at 1047–48). This special duty arises when "law enforcement officers become directly involved in circumstances which place people within a 'zone of risk' by creating or permitting dangers to exist, by taking persons into police custody, detaining them, or otherwise subjecting them to danger." Id. (citing Pollock v. Fla. Dept. of Highway Patrol, 882 So.

2d 928, 935 (Fla. 2004). "The premise underlying this theory is that a police officer's decision to assume control over a particular situation or individual or group of individuals is accompanied by a corresponding duty to exercise reasonable care." Pollock, 882 So. 2d at 935.

Here, as a threshold matter, Defendant Cline argues "Count V should be dismissed against [Defendant] Cline because he is not an employer." (Doc. 46 at 10) (citing Santillana v. Fla. State Ct. Sys., Case No.: 6:09-cv-2095-Orl-19KRS, 2010 WL 271433, at *11 (M.D. Fla. Jan. 15, 2010) ("[A] claim for negligent supervision may only be maintained against an employer, even though the underlying improper conduct is committed by an employee. . . . Finding no legal authority to the contrary, [the p]laintiff's claim of negligent supervision . . . has no legal basis because they are not alleged to be employers."). See also Watson v. City of Hialeah, 552 So.2d 1146, 1148 (Fla. 3d DCA 1989) (explaining the Florida Supreme Court's jurisprudence reviews a negligent supervision claim by analyzing a defendant employer's actions); Envtl. Prot. v. Hardy, 907 So.2d 655, 660 (Fla. 5th DCA 2005) ("Negligent supervision occurs when during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further actions such as investigation, discharge, or reassignment."); Garcia v. Duffy, 492

So.2d 435, 438 (Fla. 2d DCA 1986) ("[N]egligent . . . [supervision] allows for recovery against an employer for acts of an employee[.]").

Count V is due to be dismissed against Defendant Cline. Plaintiff has not alleged how Defendant Cline is an employer with the SJSCO. (See generally Doc. 38 at ¶¶ 133–150). Plaintiff alludes that Defendant Cline could be considered an employer because Defendant Cline "was clearly a supervisor [over] Defendants Everett and Warwin[.]" (Doc. 50 at 8). The only allegation Plaintiff provides that Defendant Cline could be considered an employer is that he signed a letter disciplining Defendant Everett after the internal affairs investigation concluded. (Docs. 38 at ¶ 68; 38.3). Signing a letter alone does not provide this Court with a sufficient basis "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Count V must be dismissed against Defendant Cline because Plaintiff has failed to allege how, as a matter of law, Defendant Cline could ever be liable under a negligent supervision theory. See Santillana, 2010 WL 271433, at *11.

The Court now turns to Plaintiff's claims of negligent hiring and supervision claims against Defendant Shoar, which are due to be dismissed. To first address the negligent hiring claim, Plaintiff fails to show how Defendant Shoar owed an individual duty of care to Plaintiff, rather than Defendant Shoar owing a general duty of care to the general public. See

Wallace, 3 So.3d at 1045; (see also generally Docs. 38, 50). Plaintiff alleges Defendant Shoar "owed the Plaintiff a duty and the Plaintiff was within the 'zone of risk' created by" Defendant Shoar's allegedly negligent hiring of the Defendant deputies. (Doc. 38 at ¶ 118). However, Plaintiff provides no other allegations about the specific duty Defendant Shoar owed Plaintiff and how Defendant Shoar breached that duty by hiring at least Defendant Everett, if not the remaining Defendants. See id.; see also Anderson, 389 F. Supp. 3d at 1091. Plaintiff has not met the pleading requirements to assert more than the sheer possibility that Defendant Shoar, in some hypothetical way, owed a specific duty to Plaintiff and breached that duty.[3] See Iqbal, 556 U.S. at 678. Plaintiff's claim against Defendant Shoar for negligent hiring, Count IV, will be dismissed. See id.

Finally, Plaintiff also fails to allege a claim against Defendant Shoar for negligent supervision. Plaintiff alleges Defendant Shoar created a "zone of risk" through "negligent hiring, retention[,] and supervision policies." (Doc. 50 at ¶ 136). At best, this Court could use Plaintiff's allegations about the SJCSO Internal Affairs investigation to support Plaintiff's negligent

---

[3] Additionally, "[n]egligent hiring occurs when, prior to the time the employee is actually hired, the employer knew or should have known of the employee's unfitness, and the issue of liability primarily focuses upon the adequacy of the employer's pre-employment investigation into the employee's background." Garcia, 492 So.2d at 438. Plaintiff makes no allegations that Defendant Shoar knew or should have know that any of the Defendant deputies were unfit for their job. Accordingly, Plaintiff's negligent hiring claim must also fail on that ground.

supervision allegations. See id. at ¶¶ 64–71. However, as Plaintiff alleges, "The deputies [involved in the incident] have been disciplined." Id. at ¶ 68; (see also Doc. 38.3).

Negligent supervision occurs when, "during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further action such as investigating." Garcia, 492 So.2d at 438–39. Taking the allegations in the light most favorable to Plaintiff, Plaintiff alleges the SJCSO, and Defendant Shoar by extension, learned of a problem with the officers involved in the incident and that SJCSO conducted an internal affairs investigation. (See Doc. 38 at ¶¶ 64–71); see also Rivell, 520 F.3d at 1309. At the conclusion of the investigation, at least Defendant Everett was disciplined. (Doc. 38 at ¶ 68). Plaintiff has failed to allege plausible facts to demonstrate Defendant Shoar either owed Plaintiff a special duty or that Defendant Shoar breached any such duty to Plaintiff through negligently supervising SJCSO deputies. See Wallace, 3 So.3d at 1045; Anderson, 389 F. Supp. 3d at 1091; Iqbal, 556 U.S. at 678. Plaintiff's negligent supervision claim against Defendant Shoar, Count V, is also dismissed.

Accordingly, after due consideration, it is

**ORDERED:**

1. Defendants Shoar and Cline's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 46) is **GRANTED**.

    a. Counts I, IV, and V of the Second Amended Complaint are **DISMISSED with prejudice.**

    b. Defendants Shoar and Cline are **DISMISSED** from this case.

**DONE** and **ORDERED** in Jacksonville, Florida this 23rd day of September, 2022.

_____
BRIAN J. DAVIS
United States District Judge

8
Copies furnished to:

Counsel of Record