UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BRYAN A. HARRISON,

      Plaintiff,

v.                                CASE NO. 3:21-cv-00746-BJD-LLL

ST. JOHNS COUNTY SHERIFF'S
OFFICE, *et. al.,*

      Defendants.

_____/

## **DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Rule 56, Federal Rules of Civil Procedure, Defendants KENNETH EVERETT and PATRICK WARWIN move for partial summary judgment in their favor on three of four claims against them. As grounds, Defendants state:

1.    Plaintiff was arrested for Stalking by St. John's County Sheriff's Deputy Kenneth Everett on Monday, July 29, 2019. At the direction of Deputy Everett's supervisor, Plaintiff was released shortly thereafter without being transported to jail or charged. The events of this approximately one-hour period form the basis of Plaintiff's claims.

2.    Plaintiff sues former deputy Kenneth Everett (hereinafter "Everett") and Deputy Patrick Warwin ("Warwin", or together "Defendants") on three grounds:

Count II –42 U.S.C. §1983 – Reckless Indifference Fourth Amendment Search & Seizure[1];

Count III –42 U.S.C. §1983 – Fourteenth Amendment Cruel & Unusual Punishment; and

Count VI – False Imprisonment under Florida common law.

3.     The undisputed evidence demonstrates that Defendants acted in the course and scope of their authority as deputies with the St. John's County Sheriff's Office, under color of law, and within the scope of their discretionary authority.

4.     Defendants are immune from suit on Count VI pursuant to Florida Statutes, §768.28, §784.046(16), and §901.15(7).

5.     Defendants are entitled to summary judgment on Plaintiff's Count II §1983 reckless indifference Fourth Amendment property search claim because he has no evidence Defendants conducted any search of his apartment.

6.     Defendants are entitled to summary judgment on Plaintiffs' §1983 claim for "Cruel and Unusual Punishment" because the undisputed facts do not support the claim.

7.     There are no genuine issues of material fact in dispute and Defendants are entitled to summary judgment on each of the claims as set forth above.

---

[1]     This claim has two parts. Defendants do not seek summary judgment on Plaintiff's Fourth Amendment unlawful seizure claim.

4863-3221-6089, v. 6

WHEREFORE, Defendants Kenneth Everett and Patrick Warwin respectfully request the entry of summary judgment in their favor as to Count II –42 U.S.C. §1983 – Reckless Indifference Fourth Amendment Search; Count III –42 U.S.C. §1983 – Fourteenth Amendment Cruel & Unusual Punishment; and Count VI – False Imprisonment under Florida common law.

## Statement of The Facts[2]

### I.   Plaintiff's Arrest

While on duty with the Sheriff's Office on Friday, July 26, 2019, Deputy Everett responded to a call for stalking where he met with and took a sworn statement from complainant Danielle McDaniel. [ECF.83-4, ¶2, pp.7-10[3]]. Ms. McDaniel advised of her prior romantic relationship with Plaintiff, of their recent break-up, of her directive to Plaintiff to stop contacting her, of her change of phone number and other efforts to sever contact with Plaintiff, and of Plaintiff's continued efforts to contact her via telephone, text message, and email. [ECF.83-4, ¶2, pp.7-10]. Ms. McDaniel provided sworn statements and shared text messages and email documentation of communications in which Plaintiff called her more than 40 times and was otherwise continuing efforts

---

[2]     Defendants do not agree with all of the facts as stated herein and they are not admissions or stipulations for trial.

[3]     All page numbers are to the ECF page number at the top of the page, not to the numbers of paginated documents.

4863-3221-6089, v. 6

to connect with her despite repeatedly telling him she did not wish to have any contact with him. [ECF.83-4, ¶2, pp.5-10].

Three days later, at the beginning of Deputy Everett's next shift on Monday, July 29, 2019, Everett spoke with his direct supervisor Sgt. Andy Thornton and confirmed that the information provided by Ms. McDaniel provided probable cause to arrest Plaintiff for Stalking in violation of Florida Statutes, §784.048(2).[4] [ECF.83-4, ¶3, pp.7-10]. Deputy Everett had authority to arrest Plaintiff without a warrant[5] because the history between Ms. McDaniel and Plaintiff made the incident one of "dating violence" under Florida Statutes, §784.06, for which Florida law authorizes a warrantless arrest. [ECF.83-2, p.16:13-25; ECF.83-4, ¶4; § 901.15(7), *Fla. Stat.*]. Before leaving the Department, Deputy Everett requested assistance from fellow deputy Keegan Warwin who worked under a different supervisor. [ECF.83-2, p.10:5-12; ECF.83-3, p.4:13-17].

---

[4]   "Generally, an officer is entitled to rely on a victim's criminal complaint as support for probable cause." *Rankin v. Evans,* 133 F.3d 1425, 1441 (11th Cir. 1998). Furthermore, the existence of probable cause cannot reasonably be in dispute as the probable cause affidavit ultimately submitted (presenting the same grounds) was approved by a judge, a warrant for Plaintiff's arrest signed, and Plaintiff was prosecuted thereon over a period of almost three years. Indeed, Plaintiff initially pled no contest to the charges. [ECF.83-8].

[5]   Deputy Everett did not have a warrant for Plaintiff's arrest at this time. [ECF.83-2, p.8:1-7].

Deputies Everett and Warwin, dressed in uniform and driving separately in their marked patrol vehicles, went to Plaintiff's apartment complex, parked, and began walking up to his second-floor apartment. [ECF.83-2 pp.8:22-23, 9:17-21, 11:3-7; ECF.83-3, pp.5:10-19, 7:8-12]. Plaintiff opened the apartment door[6] in response to Deputy Everett's knock, briefly showed his hands, and then hid them again behind the cracked door. [ECF.83-1., p.3:21-24; ECF.83-2 p.11:19-22, 12:7-11; ECF.83-3 pp.7:15-19, 11:20-22]. Concerned about Plaintiff's intentions and the inability to see his hands, Everett pushed the door further open and tried to grab Plaintiff. [ECF.83-2 p.12:16-20, 13:13-14:13]. When Plaintiff went further into the apartment, Deputy Everett followed and placed handcuffs on Plaintiff[7] before escorting him downstairs and placing Plaintiff in the back seat of his patrol vehicle per policy.[8] [ECF.83-1, pp.5:12-15, 6:13-7:3; ECF.83-2 p.12:15-30, 17:18-23; 22:11-

---

[6]     Though Plaintiff denies it, both deputies confirm that Plaintiff was descending the stairs as they approached but, upon seeing them, Plaintiff turned and ascended the stairs ignoring Everett's command to come to him and instead retreating into his apartment. [ECF.83-1., p.15:3-9; ECF.83-2. p.11:3-12; ECF.83-3 p.7:12-14].

[7]     Deputy Warwin went in as well to provide backup and assist with the handcuffs. [ECF.83-1., pp.4:19-20, 11:23-12:3; ECF.83-3, pp.8:3-7, 14:5-7].

[8]     Defendants did not have body or other cameras that captured any of the events described herein. Plaintiff advises he had a camera (or other recording device) and he has produced a 38 second video which depicts some of the events in his apartment. [ECF.83-1., pp. 28:23-29:10, and ECF.83-13, pp.1-2, No. 1]. Plaintiff initially stated that he "turned on and placed a [ ] camera in a standing position" and that it was tipped over after deputies entered the

5

21]. In accordance with normal practices, Deputy Everett contacted his supervisor to advise of Plaintiff's arrest. [ECF.83-2, pp.18:18-19:4; ECF.83-3, p.8:16-19]. Sgt. Thornton replied with tentative approval. [ECF.83-2, p.19:5-7].

It was 85 degrees outside and sunny with no clouds in the sky. [ECF.83-1., p.18:13-15]. The windows of Deputy Everett's patrol vehicle were up and, according to Plaintiff, the vehicle was not running.[9] [ECF.83-1., pp.17:14-18; ECF.83-2 p.17:24-18:2]. He kicked and screamed from the moment he was put in the car but Plaintiff alleges the deputies merely laughed at him. [ECF.83-1., p.19:1-11]. After his complaints ("Help. It's hot in here. I can't breathe. I'm going to die. I'm having chest pains."), Plaintiff alleges that Deputy Everett came back to the vehicle and turned the car and air conditioning on and left him in there and it got better. [ECF.83-1., p.20:23-21:1]. Everett later returned to the car and said he was arresting Plaintiff which caused him to panic more and he advised Deputy Everett he was having chest pains. [ECF.83-1., p.22:15-22]. At this point, Deputy Everett let him out of the car and he lay down on the concrete. [ECF.83-1., pp.22:15-23:3]. Deputies summoned Fire Rescue at 17:12

---

apartment [ECF.83-11, p.2, No. 2] but later acknowledges the camera must not have been recording before deputies entered. [ECF.83-1., p. 30:3-12].

[9]     Deputy Everett is certain that both the vehicle and its air conditioner were running. [ECF.83-2, p.18:3-11; ECF.83-4, ¶5]. Warwin also confirms this is the norm, "[I]t's not customary for us to put individuals in the back of our patrol cars with the air off in the middle of the summer with the windows up." [ECF.83-3, p.13:1-7].

4863-3221-6089, v. 6

regarding Plaintiff having a panic attack. [ECF.83-6., ¶4, pp.2-4]. Plaintiff was in the car with the windows up and no air conditioning for less than 19 minutes.[10]

Plaintiff estimates EMS arrived 15 minutes later. [ECF.83-1., p.23:20-21]. Plaintiff was assessed and no abnormalities were found [ECF.83-6., ¶4, pp.2-4], and he was accompanied by an EMT to his apartment to take his previously prescribed Alprazolam which he had already taken once that day. [ECF.83-1., pp.23:22-24:25; ECF.83-12, p.2, No. 5].

Sergeant Thornton called Deputy Everett back and directed him "to not place [Plaintiff] under arrest" due to the entry into the apartment without a

---

[10]    As noted, Defendants deny Plaintiff was ever in the patrol vehicle without air conditioning. Although Plaintiff contends he was left in the hot-car for an extended period of 40-"45 minutes, minimum", [ECF.83-1., p.9:1-4, 166:8-11, 181:10-14], the undisputed evidence demonstrates that the actual time would necessarily have been less than 19 minutes. To wit:

Deputies Everett and Warwin arrived on scene at Plaintiff's apartment complex at 16:48. [ECF.83-6. ¶4, pp.2-4]. Fire Rescue was called 24-minutes later at 17:12, when Plaintiff was already out of the car and lying on the concrete. [ECF.83-6. ¶4, pp.2-4; ECF.83-1., p.22:23 – 23:3]. After subtracting a bare minimum amount of time for the Deputies to climb the stairs (1-minute - *i.e.,* the same amount of time Plaintiff estimated it took to descend them, [ECF.83-1., pp.7:24-8:2]), to speak with, hand-cuff, and secure Plaintiff inside the apartment (1-2 minutes) [ECF.83-1., p.7:4-7], to descend back down the stairs (1-minute), [ECF.83-1., pp.7:24-8:2]), to search Plaintiff and secure him in the car before closing the door (45 seconds) [ECF.83-1., p.8:22-25], Plaintiff was in the car for a maximum of 19 minutes. Further, because Plaintiff alleges that Deputy Everett returned and turned on the air conditioning sometime *before* he exited the car—Plaintiff's time in a "hot car" is reduced to something *less than* 19-minutes. [ECF.83-1., p.20:23-21:1].

warrant. [ECF.83-2, p.19:5-9, 14-19]. Plaintiff was released immediately [ECF.83-2, p.20:15-23], allowed to go back to his apartment, and everyone left. [ECF.83-1., p.10:1-12].

Deputy Everett (and Deputy Warwin accompanying him), were found by a supervisor to have made a mistake entering the apartment and were counseled later the same day. [ECF.83-2, pp.6:19-7:17, 15:19-25; ECF.83-3, p.12:17-24]. Deputy Everett subsequently submitted all evidence and a probable cause affidavit to obtain a warrant for Plaintiff's arrest. [ECF.83-7]. Deputies Everett and Warwin had no further involvement in the case except in response to requests or subpoena in Plaintiff's criminal case. [ECF.83-4, ¶6; ECF.83-3, pp.17:12-18:1; ECF.83-5, ¶3]. A warrant was issued and Plaintiff was subsequently arrested by others. [ECF.83-4, ¶6].

## II.   <u>The alleged search of Plaintiff's apartment</u>

Plaintiff believes that Deputies Everett and Warwin unlawfully searched his apartment: "When I was in the car, . . .both of them at some point were standing by themselves and I saw them go back up there." [ECF.83-1., p.25:12-14]. "I remember both of them going up separately." [ECF.83-1., p.25:18-19]. Plaintiff could not see the entry door to his apartment from his vantage point but knows his "stuff had been moved when [he] got back." [ECF.83-1., p.26:4-5]. Nothing was missing. [ECF.83-1., p.27:17-18].

8

Defendants did not search Plaintiff's apartment. [ECF.83-9, p.3, No. 10; ECF.83-10, p. 3, No. 9].

### III.   Defendant Kenneth Everett

Kenneth Everett was a deputy with the St. John's County Sheriff's Office in July 2019, having been a sworn law enforcement officer with them for approximately three[11] years. [ECF.83-2, pp.2:17-19, 5:1-19]. His training included the law enforcement academy, annual training, training on policies and procedures, and on-the-job with the Sheriff's Office. [ECF.83-2, pp.3:4-4:5; ECF.83-4, ¶1; ECF.83-9, pp. 2-3, No. 7, pp.6-12].

At all times, Everett acted in the course and scope of his duties as a deputy employed by the St. John's County Sheriff's Office. [ECF.83-4, ¶7]. All measures taken by him with respect to his investigation, detention of Plaintiff, and application for an arrest warrant, were under the authority granted him by state and federal law and within his discretionary duties as a sworn law enforcement officer. [ECF.83-4, ¶7]. He acted at all times in good faith and without malice or ill will towards Plaintiff. [ECF.83-4, ¶9].

### IV.   Defendant Patrick Warwin

---

[11] Though his initial employment date as a sworn deputy was in 2014, Deputy Everett had been absent for military duty various times totaling approximately two years. [ECF.83-2, pp.2:17-19, 5:1-19].

Apart from serving as a backup to Deputy Everett on July 29, 2019, Deputy Warwin had virtually no involvement with Plaintiff. [ECF.83-10, p. 2, No. 6; ECF.83-5, ¶3]. Plaintiff's allegations against him include that he was behind Deputy Everett and that "he's very big and menacing looking," "his facial expression wasn't pleasant," "he was part of pushing the door," [ECF.83-1., p.4:19-24, 5:1-5, 11:11-14]; he intentionally knocked over the camera with his elbow[12] [ECF.83-1., 13:1-15]; and he helped place Plaintiff in handcuffs. [ECF.83-1., pp.15:23-16:2]. Outside, he reportedly made the comment "Give him a few minutes in there. I'll bet you he'll change his tune." suggesting Plaintiff should be left in a hot car.[13] [ECF.83-1., p.17:8-11].

Patrick Warwin was a deputy with the St. John's County Sheriff's Office in July 2019, employed by Sheriff Shoar as a sworn law enforcement officer for

---

[12]    Defendant Warwin denies knocking over a camera pointing out that the video continued into the breezeway of the apartment complex. [ECF.83-3, pp.15:24-16:4; ECF.83-10, pp. 3-4, No. 10,11; ECF.83-14 at 00:03 (Plaintiff" *"This is all being recorded."* Deputy Everett: *"That's fine."*]. Everett also denies a camera was knocked over and believes it may have been Plaintiff's cell phone in his hand. [ECF.83-2, p.21:6-21]. Plaintiff acknowledges that he was able to pick up the camera and hold it in his hand while he was being handcuffed. [ECF.83-1, pp.6:19-22, 13:11-13, 14:3-8]. If the video was stopped, Deputy Everett suggests it was likely done by him at the time that he searched Plaintiff and took control of his possessions when putting him in the patrol car. [ECF.83-2, p.22:9-21].

[13]    Plaintiff also alleges Deputy Warwin walked back up the stairs to his apartment while he was in the police car [ECF.83-11, p. 2, No. 3] but acknowledges that he could not see the door to his apartment and never saw Warwin "or anybody" enter the apartment. [ECF.83-1., p.26:1-5].

approximately 16 months. [ECF.83-3, p.2:17-20]. Warwin's training at that time included 760 hours with the law enforcement academy, and training on policies and procedures and on-the-job with the Sheriff's Office including two months of classroom training and two months of training in the field. [ECF.83-3, pp.2:17-3:5; ECF.83-10, p. 3, No. 7 and pp.6-8; ECF.83-5, ¶2]. Training on entry was throughout the academy and his employment and he received annual refresher courses. [ECF.83-3, pp.9:11-10:3]. This training provided guidance for situation-based decisions. [ECF.83-3, pp.9:11-10:3].

At all times, Warwin acted in the course and scope of his duties as a deputy employed by the St. John's County Sheriff's Office. [ECF.83-5, ¶4]. All measures taken by him with respect to his back-up of Deputy Everett and interactions with and detention of Plaintiff were under the authority granted him by state and federal law and within his discretionary duties as a sworn law enforcement officer. [ECF.83-5, ¶4]. He acted at all times in good faith and without malice or ill will towards Plaintiff. [ECF.83-5, ¶¶4-5].

<u>**MEMORANDUM OF LAW**</u>

Pursuant to Local Rule 3.01(a), Defendants Warwin and Everett offer the following memorandum of law in support of their Motion:

### I.    <u>Motion for summary judgment standard.</u>

Summary judgment is appropriate if, based on materials in the record, "the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56. This standard provides that "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) (emphasis in original).

"A party opposing summary judgment may not rest upon the mere allegations or denials in its pleadings." *Walker v. Darby*, 911 F.2d 1573, 1576 (11th Cir.1990). "A mere scintilla of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Anderson*, 477 U.S. 242 at 253. "'Unsupported speculation ... does not meet a party's burden of producing some defense to a summary judgment motion. Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.'" *Giles v. Winn-Dixie Montgomery, LLC*, 574 Fed. Appx. 892, 894 (11th Cir.2014), quoting *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir.2005).

## II. Defendants are immune from suit on Plaintiff's state law false imprisonment claim (Count VI).

Count VI alleges that Defendants Everett and Warwin falsely imprisoned Plaintiff without probable cause while acting within the scope of

their employment. Florida law provides absolute sovereign immunity from suit to governmental employees accused of committing negligence in the course and scope of their governmental employment:

> No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property[.]

§ 768.28(9)(a), *Fla. Stat. See e.g. Keck v. Eminisor*, 104 So. 3d 359, 363, 366 (Fla. 2012) ("If a State officer, employee, or agent acts within the scope of employment and does not act in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard, the plaintiff's exclusive recourse is to seek damages from the governmental entity."); *Alvoid as next friend A.R.A v. Sch. Dist. of Escambia Cnty.,* 582 F. Supp. 3d 1140, 1150 (N.D. Fla. 2021) ("The immunity may be pierced only if state agents either act outside the scope of their employment, or act 'in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.'").

Although the statute does not define "bad faith," "'bad faith' ... has been 'equated with the actual malice standard.' " *Butler v. Gualtieri*, 41 F.4th 1329, 1336 (11th Cir. 2022) (quoting *Parker v. State of Fla. Bd. of Regents ex rel. Fla.*

*State Univ.*, 724 So. 2d 163, 167 (Fla. 1st DCA 1998)). The term "'malicious purpose' ... has been interpreted as meaning the conduct was committed with 'ill will, hatred, spite, [or] an evil intent.'" *Id.* and the term "wanton" has been interpreted to mean "with a conscious and intentional indifference to consequences and with the knowledge that damage is likely to be done to persons or property," *Peterson v. Pollack*, 290 So. 3d 102, 110 (Fla. 4th DCA 2020). *See also Sierra v. Associated Marine Insts., Inc.*, 850 So. 2d 582, 593 (Fla. 2d DCA 2003) (explaining that section 768.28(9)(a) requires "conduct that is worse than 'gross negligence.'"). Thus, "the standard to overcome immunity [under § 768.28(9)(a) is at least as high as the standard needed to prove [a plaintiff's] § 1983 [deliberate indifference] claims." *Valdes v. Crosby*, 390 F. Supp. 2d 1084, 1108 (M.D. Fla. 2005) (emphasis added), *aff'd*, 450 F.3d 1231 (11th Cir. 2006).

For this count, Plaintiff alleges—and the undisputed evidence confirms—that Defendants were acting within the scope of their employment at all relevant times. [Doc.38, ¶157]. Further, although the Deputies were internally found to have made a mistake in arresting Plaintiff without a warrant in his home, the Deputies' subsequent conduct of immediately inquiring about the arrest, releasing Plaintiff within an hour, and Everett's following the process for a valid warrant demonstrate the mistake was not

made in bad faith or with malicious purpose. At most, Defendants engaged in ordinary on the job negligence—for which they enjoy absolute immunity. § 768.28(9)(a), *Fla. Stat.*

### III. <u>Count II - §1983 claim for unlawful search.</u>

Plaintiff claims in Count II that Defendants violated his Fourth Amendment rights because there was no probable cause for the search of his property. [Doc.38, ¶¶89-90]. Even if the Fourth Amendment requires a warrant for search of Plaintiff's apartment in this instance, s*ee, e.g., Fuqua v. Turner,* 996 F.3d 1140, 1151 (11th Cir. 2021), Plaintiff's claim fails because he has no evidence that Defendants searched his apartment. Plaintiff's sole "evidence" on this claim is that he saw the deputies go upstairs separately, and though he could not see his doorway and did not see them enter his apartment, he believes that his "stuff had been moved" when he got back. Plaintiff therefore concludes and assumes, Deputies Everett and Warwin entered his apartment and conducted a search.

Defendants deny that they subsequently entered or searched Plaintiff's apartment and Plaintiff's speculation otherwise is insufficient to establish a genuine disputed issue of fact for a reasonable jury to conclude that a search occurred. *See Hammett v. Paulding County*, 875 F.3d 1036, 1052 (11th Cir. 2017) ("A genuine dispute requires more than some metaphysical doubt as to the material facts. A mere scintilla of evidence is insufficient; the non-moving

party must produce substantial evidence in order to defeat a motion for summary judgment.").

### IV.   <u>Count III – Cruel and Unusual Punishment</u>

**A. Defendants did not violate Plaintiff's constitutional rights.**

Count III is a 42 U.S.C. §1983 alleging that Plaintiff's confinement in a hot car constituted "Cruel & Unusual Punishment" in violation of the Fourteenth Amendment to the United States Constitution.

It is unclear whether Plaintiff's claims should be analyzed as an "arrestee" under the Fourth Amendment, or a "pre-trial detainee" under the Fourteenth Amendment. However, as discussed in *Patel v. Lanier Cnty. Georgia*, 969 F.3d 1173, 1182, fn.6 (11th Cir. 2020), the distinction makes little difference as both amendments are now governed by a rule of "objective reasonableness." *Id*. at 1181-82 (citing *Kingsley v. Hendrickson,* 576 U.S. 389, 135 S.Ct. 2466, 192 L.Ed.2d 416 (2015)).  *See Piazza v. Jefferson Cnty., Al*, 923 F.3d 947, 953 (11th Cir. 2019) ("After *Kingsley*, the Fourteenth Amendment's standard is analogous to the Fourth Amendment's").

In *Patel,* the Eleventh Circuit Court of Appeals sought to "bring clarity to the law governing [hot car claims]" in this Circuit. *Patel,* 969 F.3d at 1182. *Patel* involved the transportation of a pre-trial detainee from the jail to a neighboring county. While stopping to pick up another detainee, the plaintiff was left in a transport van for almost an hour with no fan or air conditioning.

16

Outside temperatures were at least 85º. When the deputy returned to the van, he found the plaintiff lying unconscious on the floor, sweating and hyperventilating. Though the deputy revived the plaintiff with a sternum rub, helped him back onto a seat, he provided no water as requested. He cranked the van and drove to the destination, and though the air conditioning was on in the front of the vehicle, a plexiglass screen which separated the prisoner area did not allow air to pass. Upon arrival, the plaintiff had again fallen from the bench to the floor, unconscious, hyperventilating, and excreting mucus and saliva from his nose and mouth. He had been in the hot van for more than two hours. The plaintiff sued alleging his detention in the hot van was unconstitutional excessive force. *Patel,* 969 F.3d at 1179-1180.

Applying the *Kingsley* excessive force factors,[14] the *Patel* court held that in cases where an arrestee/detainee is subjected to hazardous conditions, the first factor "is a function of two component factors — (1) the severity of those conditions and (2) the duration of his subjection to them." *Id.* (concluding that

---

[14]     *Kingsley* held that the following factors "may bear on the reasonableness or unreasonableness of the force used:"

> [1] the relationship between the need for the use of force and the amount of force used; [2] the extent of the plaintiff's injury; [3] any effort made by the officer to temper or to limit the amount of force; [4] the severity of the security problem at issue; [5] the threat reasonably perceived by the officer; and [6] whether the plaintiff was actively resisting.

*Kingsley*, 576 U.S. at 397, 135 S.Ct. 2466.

"[t]he more severe the conditions, the shorter the detention need be before it amounts to excessive force—and vice versa," but that "[d]etention in harsher conditions may be justified where alternative modes of detention are not readily available."). Other relevant factors considered by the court included the extent of the plaintiff's injury," and "[w]hat steps [the Deputy] have taken to ameliorate [the plaintiff's] situation."[15]

*Patel* ultimately determined that under the particular circumstances of that case, the plaintiff's "detention and transport were 'more severe than [was] necessary to . . . achieve a permissible governmental objective," and violated his constitutional rights. *Patel*, at 1184. Nevertheless, despite the constitutional violation, the court determined that the underlying law which applied to his excessive-force claim was not sufficiently "clearly established" to defeat the deputy's qualified immunity. *Patel*, at 1184. The Court observed that "[o]nly cases from the United States Supreme Court, this Court, and the highest state court under which the claim arose can clearly establish the law in our Circuit." *Patel*, at 1181, fn.5. After exhausting and analyzing other relevant case law, the Eleventh Circuit pronounced that there was "nothing in the then-existing law that would have given [the deputy] fair notice that his

---

[15]     There was no evidence that the deputy faced a "security problem," or that the plaintiff was "actively resisting" or was a "threat," eliminating the need to analyze such factors.

particular conduct amounted to excessive force." He was protected by qualified immunity. *Patel*, at 1188.

A year later, the Eleventh Circuit considered and decided another "hot car" case, *Crocker v. Beatty,* 995 F.3d 1232 (11th Cir. 2021), *cert. denied,* 211 L.Ed. 2d 522 (2022). The *Crocker* plaintiff was an onlooker at the scene of a fatal car crash on I-95 who was arrested by law enforcement and detained in a hot patrol car for 22 – 30 minutes, allegedly without air conditioning. *Crocker,* at 1238. Similar to the facts alleged by Plaintiff here, the circumstances in *Crocker* included an outdoor temperature of 84°F, causing the plaintiff to become very hot and uncomfortable inside the patrol car, to sweat profusely, to experience trouble breathing, and to feel anxious. *Id.* at 1238.  Continuing similarities, the deputy allegedly left the vehicle for a while and upon his return, the plaintiff begged for air and said he was "about to die," to which the deputy reportedly replied, "[I]t's not meant to be comfortable sir," leaving the plaintiff in the vehicle where he was. *Id.*at 1238. Sometime later, another law enforcement officer opened the car door, and later yet, the arresting officer turned the vehicle on. *Id.* at 1238.

The case at bar is most analogous to *Crocker v. Beatty,* in which the Court found that no constitutional violation occurred even at a half hour in the back of a hot car. The Eleventh Circuit Court of Appeals commenced its analysis in *Crocker* with this quote from *Patel*:

19

> "We begin from the premises that exposure to uncomfortable heat is part and parcel of life in the South and, accordingly, that not every 'hot car' case will give rise to a cognizable constitutional claim." This one doesn't."

*Crocker,* 995 F.3d at 1232 (internal citation omitted). Applying the *Kingsley* factors, the *Crocker* court determined first that no constitutional violation had occurred, and second, that even if it had, the deputy was entitled to qualified immunity.

Considering the first *Kinsgley* factor: the need for force – there was no other feasible place to detain the plaintiff, and the amount used – including the severity of the conditions (84° outside, no AC in vehicle), and the length of time endured (half an hour). The *Crocker* court compared the facts related to this first factor to those in *Patel* where the plaintiff could have been held inside the adjacent jail instead of in the vehicle, where the temperature was similar, but the detention of two hours was much longer. It concluded the amount of force used in *Patel* was far greater. *Crocker,* 995 F.3d at 1250.

Second, the extent of injury: *Crocker* acknowledged that injuries can be an indicator of the severity of the force used. *Id.* at 1251. Crocker's discomfort was considered a "lack of injury" in contrast to the *Patel* plaintiff who "unconscious, hyperventilating, and with mucus and saliva running from his nose and mouth."

20

Third, efforts to temper or limit the force: The deputy in *Crocker* returned to the car twice, and though rude, turned the air conditioner on when he returned the second time. By comparison, in *Patel*, the officer left the detainee in the conditions for two hours and did not provide water as he was requested and agreed to do.

*Crocker* gave only a cursory review to *Kingsley* factors four through six, finding no real evidence to support them, before concluding:

> there was very little "force" used and essentially no harm done. In the Fourteenth Amendment context—and the Fourth as well, for that matter—"[t]here is, of course, a *de minimis* level of imposition with which the Constitution is not concerned." That *de minimis* principle reflects the reality that "[n]ot everything that stinks violates the Constitution." And it's hard to imagine how we could find a constitutional violation here without making a federal case of just about every "hot car" incident in Alabama, Florida, and Georgia, which we (once again) decline to do. Beatty's alleged conduct might have stunk, but it wasn't unconstitutional.

*Crocker,* 995 F.3d at 1251. Likewise, in the instant case, there can be no legitimate argument that the circumstances of Plaintiff's detention in the patrol car allegedly without air conditioning was unconstitutional. Placement in a patrol vehicle for transportation upon arrest is a generally accepted police practice. There is no evidence of a secure detention facility adjacent and available as an alternative. The temperature was 85°, nearly identical to that in *Crocker*. And despite Plaintiff's claim that the detention was for "45 minutes, minimum," his own testimony and the documentary evidence confirm that the

detention was less than 19 minutes. If 30 minutes in a vehicle under similar circumstances was not unconstitutional in *Crocker*, fewer than 19 minutes cannot be so here.

### B. Defendants are entitled to qualified immunity.

The *Crocker* court did not end its analysis with consideration of the constitutional violation. It next turned to the question of qualified immunity.

Qualified immunity shields government officials from liability in the civil context to the extent their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Entitlement to the immunity is premised on the officer acting within his discretionary authority, *Crocker,* 995 F. 3d at 1239 (internal citations omitted), a fact which is not disputed here. The burden then falls to the Plaintiff to demonstrate that the immunity does not apply by establishing 1) a constitutional violation, and 2) that the particular right was "clearly established" at the time of the incident. *Crocker*, 995 F.3d at 1239-40. Plaintiff cannot fulfill this duty.

As to the first element, as shown above, Defendants did not violate Plaintiff's constitutional rights by placing him in a "hot car" as alleged. And as to the second element, if it was a constitutional violation, it was unequivocally *not* clearly established law at the time of the events in 2019. As *Crocker* noted,

22

"only decisions of the United States Supreme Court, this Court, or the highest court in a state can 'clearly establish' the law." *Crocker,* at 1240. The *Patel* court analyzed all other relevant case law and pronounced that there was "nothing in the then-existing law that would have given [the deputy] fair notice that his particular conduct amounted to excessive force." He was protected by qualified immunity. *Patel*, at 1188.  *Crocker* then confirmed that lack of well-established law stating:

> If we harbored any doubts about that conclusion [that no constitutional violation occurred] —and we don't—we'd still affirm the grant of summary judgment because the law on this point is not at all clearly established. Until recently, we'd never even "directly confronted a 'hot car' case ...."  Our one-time paucity of hot-car caselaw makes it tough for Crocker to win. Not even Patel—whose constitutional claim was much stronger—could overcome qualified immunity.  And frankly, we can't see how Crocker's claim could succeed where Patel's failed.

*Crocker,* 995 F.3d at 1250–52 (internal citations omitted).

The Eleventh Circuit found that the law was *not clearly established* at the time of its decision in *Crocker* in 2021 that an arrestee could not be placed in the back of a patrol car without windows lowered or without air conditioning for a period of 30 minutes. Thus, the individual deputy was entitled to qualified immunity.

If the law regarding placement of an individual in a hot car was not clearly established before *Crocker* was decided in 2021, then it could not have been established in 2019 at the time of the events in this case so as to put

Defendants on fair notice that their actions violated the Constitution. They are entitled to qualified immunity.[16]

## V. <u>Conclusion</u>

There is no genuine dispute as to the material facts presented here for purposes of summary judgment, and it is clear that Plaintiff's claims set forth above cannot succeed. Defendants are entitled to summary judgment on Plaintiffs claim in Count II –42 U.S.C. §1983 – Reckless Indifference Fourth Amendment Search; Count III –42 U.S.C. §1983 – Fourteenth Amendment Cruel & Unusual Punishment; and Count VI – False Imprisonment under Florida common law.

Respectfully submitted this 31st day of March 2023.

---

[16]    Plaintiff offers no evidence that Warwin was responsible for him being placed in the "hot car," and Warwin denies the same. However, to the extent any such claim is alleged against Defendant Warwin, he is entitled to summary judgment on the same grounds as Defendant Everett.

4863-3221-6089, v. 6

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.01

The undersigned certifies that the foregoing Motion complies with Local Rule 3.01 because it is no longer than 25 pages.

/s/ Gwendolyn P. Adkins



Gwendolyn P. Adkins
(FBN: 0949566)
gadkins@coppinsmonroe.com
bmiller@coppinsmonroe.com
adelk@coppinsmonroe.com

COPPINS MONROE, P.A.
1319 Thomaswood Drive
Tallahassee, FL 32308
Office: 850-422-2420   Fax: 850-422-2730

ATTORNEY FOR DEFENDANTS
KENNETH EVERETT and
PATRICK WARWIN

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(b)(3), this document is being filed electronically and service shall be through the Court's transmission facilities on all persons appearing before this Court.

/s/ Gwendolyn Adkins
Attorney

4863-3221-6089, v. 6